

# COURT OF APPEALS
## SECOND DISTRICT OF TEXAS
## FORT WORTH

### NO. 02-14-00180-CR

MICHAEL WADE RIDDLE                                        APPELLANT

V.

THE STATE OF TEXAS                                              STATE

----------

## FROM THE 89TH DISTRICT COURT OF WICHITA COUNTY
## TRIAL COURT NO. 41,428-C

----------

## MEMORANDUM OPINION[1]

----------

Appellant Michael Wade Riddle appeals from the revocation of his community supervision and resulting sentence. Finding no abuse of discretion in the revocation, we affirm the trial court's judgment.

---

[1]*See* Tex. R. App. P. 47.4.

# I. BACKGROUND

## A. DEFERRED ADJUDICATION COMMUNITY SUPERVISION

On September 30, 2004, Riddle pleaded guilty to aggravated sexual assault. *See* Tex. Penal Code Ann. § 22.021(a)(1)(B)(i) (West Supp. 2014). The trial court deferred adjudicating Appellant's guilt and placed him on community supervision for ten years. *See* Tex. Code Crim. Proc. Ann. art. 42.12, § 5(a) (West Supp. 2014). Appellant's community supervision was governed by several conditions, including conditions requiring him to (1) "[c]ommit no offense against the laws of this State or of any other State or of the United States"; (2) "[a]void injurious or vicious habits, namely alcoholic beverages, marihuana, narcotics or other habit-forming drugs"; (3) pay monthly court costs, supervision fees, fines, and sexual-offender fees; and (4) either successfully complete a sexual-abuse-treatment program "as determined by the treatment specialist(s)" or remain in such a program until the expiration of Appellant's community-supervision term. *See id.* art. 42.12, §§ 11, 13B(a)(2), 19.

## B. ADJUDICATION HEARINGS

On October 30, 2006, the State filed a motion to proceed to adjudicate Appellant's guilt, alleging that Appellant had violated the community-supervision terms. *See id.* art. 42.12, § 21(e). After the trial court set and reset the hearing multiple times, Appellant requested the appointment of an expert, which the trial court apparently granted. On June 4, 2007, the State amended its motion to proceed to adjudication and alleged that Appellant had violated the four

2

community-supervision terms previously recited. The trial court began a hearing on the State's motion to revoke on July 18, 2007.

Appellant pleaded not true to the violation allegations. At the hearing, Appellant's community-supervision officer, Michael Richards, testified that on September 20, 2006, Appellant "admitted to using cocaine for about a month" when Richards requested that Appellant submit to a random drug test. Richards further testified that Appellant had failed to pay court costs, supervision fees, fines, and sex-offender fees.

Emily Orozco, a treatment provider at Appellant's sex-offender-treatment program, testified that Appellant had been discharged from the program because he had repeated contact with children, consorted with "individuals of disreputable character," did not cooperate in therapy, continued to have "ongoing deviant and repeated sexual fantasies" (some of which involved the nine-year-old complainant in the underlying offense), and committed other offenses, including assaulting his disabled wife. Orozco summed up why Appellant was discharged from the program: "He showed a pattern of deliberate chronic violations that not only violated his stipulation of probation, his treatment agreement, but basically, he had committed new offenses."

The State alleged that Appellant had committed the new offense of injury to a disabled individual, i.e., his wife. *See* Tex. Penal Code Ann. § 22.04 (West Supp. 2014). At the revocation hearing, Appellant's wife testified about the offense, which occurred on September 10, 2006, while Appellant was high on

3

cocaine. She stated that she must use a walker and, occasionally, a wheelchair. After the State rested its case, the trial court set the remainder of the adjudication hearing for August 15, 2007.

On August 7, 2007, Appellant's counsel, Dorie Glickman, filed a sworn motion to continue the hearing because she would be on vacation and because she had not received the court-appointed expert's curriculum vitae. The trial court continued the hearing date until October 31, 2007. On October 18, 2007, Glickman filed a sworn motion to continue the adjudication hearing because the court-appointed expert, Ron Burks, and a fact witness, Ron Perrett, were not available to testify on October 31. Glickman stated in the motion that Perrett was a "necessary" witness who would testify to Appellant's "character" and "prior candidacy for supervision." She further stated that Burks "can evaluate [Appellant] regarding his present candidacy for sex offender probation, and whether or not Ms. Orozco's treatment and administration of [Appellant] falls within the standard of care." The trial court denied the motion.

Before the October 31 hearing began,[2] Glickman again raised the motion to continue on Appellant's behalf asserting that Perrett, "who had supervised

---

[2]The clerk's record contains an order purporting to extend the hearing on the State's motion from October 31 to November 14. However, the reporter's record reflects that evidence on the State's motion to proceed to adjudication was heard on October 31. It appears this order actually continued the punishment hearing and not the adjudication hearing as noted.

[Appellant] on probation in the past and was able to work with him for five years," was not available to testify. The trial court explained why it denied the motion:

> [T]his case has been set and reset on numerous occasions and usually at the request of [Appellant's attorney]. In fact, it was reset specifically for the purposes of allowing experts to come into the fold, . . . so . . . this matter was originally set . . . in May of 2007. We eventually got started in July of 2007. . . . Since that time, it's been set again on more than one occasion. And it's . . . time for it to be moved along.

Glickman called two character witnesses, James Rasmussen and Gary Southard, who testified to Appellant's difficult upbringing and to their opinions that Appellant would be a good candidate for further community supervision. Glickman also called Dr. John F. Butler, who had reviewed Orozco's records regarding Appellant. Butler stated that because Orozco had not evaluated Appellant's risk factors or Appellant's intellectual ability, she could not have accurately determined the appropriate treatment for him.

After the State and Appellant presented closing arguments, the trial court concluded that Appellant had committed a new offense by causing injury to a disabled person, failed to avoid injurious or vicious habits by admitting to cocaine use, failed to pay court costs, failed to pay supervision fees, failed to pay a sex-offender fee, and failed to successfully complete the sex-offender program. Thus, the trial court found those allegations to be true. The trial court found not true the allegation that Appellant failed to pay a fine. The trial court adjudicated Appellant guilty of the underlying offense. *See id.* art. 42.12, §§ 5(b), 21(b-2).

5

Appellant asked for a two-week continuance to gather evidence relevant to punishment, which the trial court granted to November 14, 2007.

## C. PUNISHMENT HEARING

At the November 14 hearing, Appellant's counsel, Tony Odiorne,[3] stated that he did not intend to call any witnesses for the purposes of punishment but wanted to submit a report from Butler, which was still being prepared.[4] The trial court stated that it would review the report when it was prepared and would then "determine whether or not there is a need to have any further hearing." On November 28, 2007, the trial court set a punishment hearing for December 13, 2007. The next day, Glickman filed a motion to supplement evidence "with a report by . . . Butler," which the trial court granted. In the report, Butler recommended that Appellant "be given a trial of treatment with . . . Burks for a period of about six months" to fully exhaust "all local re[s]ourses."

At the hearing on December 13, 2007, another public defender representing Appellant, Brennon Brady,[5] noted that Glickman was unable to be present but that he was "ready" and "prepared" to proceed regarding sentencing.

---

[3]Like Glickman, Odiorne was with the public defender's office and had represented Appellant since the State filed its motion to proceed to adjudication.

[4]The State averred that it would rely on the evidence presented at the adjudication hearings in arguing the appropriate punishment.

[5]Brady was the initial attorney from the public defender's office whom the trial court appointed to represent Appellant in the revocation proceeding. The public defender's office also represented Appellant in the underlying offense.

Brady stated that Appellant was "concern[ed]" that Glickman was not present and that Appellant desired a continuance, but Brady believed that Glickman's absence was not an issue because no evidence would be presented. The trial court denied the continuance because "there is to be no evidence presented today, nor are there to be any arguments presented. . . . [A]ll there is left to do is the sentencing." Appellant then directly addressed the trial court:

> I've trusted my attorney. This is twice that she has not been here. I understand that this Court is trying to dispose of this case. Also, please understand with this Court that I do have some stuff I would like to go over my attorney with that I think might make a difference in this. I do need Dorie Glickman here to take care of this for me as she has been acting as my attorney. I understand that she has a family emergency. I was told the same thing the last time we were here. I don't know what's going on, Your Honor, nobody's told me anything. But I would like my attorney to be present and I do ask for that continuance until my attorney can be here.

The trial court again denied Appellant's motion for a continuance because there would be no presentation of evidence. Brady asked that Appellant's objection be "noted." The trial court, after stating that it had considered Butler's report and the evidence admitted at the adjudication hearings, sentenced Appellant to life confinement because Appellant had shown "a disregard of the order of community supervision" and group therapy "did not appear to have any positive impact on [Appellant] at all."

## D. APPEAL

Appellant filed the instant appeal.[6] In seven points, he argues that (1) the evidence was insufficient to support the trial court's true findings, (2) the trial court erred by denying the October 18 motion for continuance, (3) the trial court erred by refusing to allow closing arguments at the punishment hearing, and (4) his community-supervision condition regarding his sex-offender program was not properly modified; thus, it could not serve as a basis for adjudication or revocation.

## II. SUFFICIENCY OF THE EVIDENCE

In his third, fourth, sixth, and seventh points, Appellant argues that the evidence was insufficient to support the trial court's findings that he violated his community-supervision conditions. We conclude that the trial court did not abuse its discretion by finding these alleged violations true.

### A. STANDARD OF REVIEW

We review an order revoking community supervision under an abuse of discretion standard. *Rickels v. State*, 202 S.W.3d 759, 763 (Tex. Crim. App. 2006); *Cardona v. State*, 665 S.W.2d 492, 493 (Tex. Crim. App. 1984). In a revocation proceeding, the State must prove by a preponderance of the evidence that the defendant violated the terms and conditions of community supervision.

---

[6]The court of criminal appeals twice granted Appellant an out-of-time appeal. *Ex parte Riddle*, No. WR-78748-02, 2014 WL 1328387, at *1 (Tex. Crim. App. Apr. 2, 2014); *Ex parte Riddle*, No. AP-76946, 2013 WL 172825, at *1 (Tex. Crim. App. Jan. 16, 2013).

*Hacker v. State*, 389 S.W.3d 860, 864–65 (Tex. Crim. App. 2013). The trial court is the sole judge of the credibility of the witnesses and the weight to be given their testimony, and we review the evidence in the light most favorable to the trial court's ruling. *Cardona*, 665 S.W.2d at 493; *Garrett v. State*, 619 S.W.2d 172, 174 (Tex. Crim. App. [Panel Op.] 1981). If the State fails to meet its burden of proof, the trial court abuses its discretion in revoking the community supervision. *Cardona*, 665 S.W.2d at 493–94. Proof by a preponderance of the evidence of any *one* of the alleged violations of the conditions of community supervision is sufficient to support a revocation order. *Moore v. State*, 605 S.W.2d 924, 926 (Tex. Crim. App. [Panel Op.] 1980); *Sanchez v. State*, 603 S.W.2d 869, 871 (Tex. Crim. App. [Panel Op.] 1980).

### B. APPLICATION

### 1. Commit New Offense

Appellant argues in his seventh point that the evidence was insufficient to show that his wife was disabled such that his assault on her constituted an injury to a disabled individual.[7] *See* Tex. Penal Code Ann. § 22.04(a). A disabled person is "a person older than 14 years of age who by reason of age or physical or mental disease, defect, or injury is substantially unable to protect [herself] from harm or to provide food, shelter, or medical care for [herself]." *Id.* § 22.04(c)(3). Once again, the preponderance of the evidence is a lesser standard of proof than

---

[7]Appellant specifically does not challenge the sufficiency of the evidence to support a finding that he assaulted his wife.

is required in a criminal trial. *See Hacker*, 389 S.W.3d at 864–65. Thus, a defendant may be acquitted of a criminal offense and still have his community supervision revoked based on the same act. *Polk v. State*, 729 S.W.2d 749, 750 n.1 (Tex. Crim. App. 1987); *Black v. State*, 411 S.W.3d 25, 30 (Tex. App.—Houston [14th Dist.] 2013, no pet.).

Here, Appellant's wife testified that she was thirty-five years old, she depended on a walker and a wheelchair to get around, and she received social-security-disability payments. She was disabled after she was assaulted in 1999 and suffered nerve damage. She stated that she was unable to protect herself from Appellant because of her disability. Two police officers who investigated Appellant's wife's complaint after Appellant assaulted her testified that she was unable to take care of herself and appeared to be physically and mentally disabled. This evidence meets the preponderance standard and sufficiently supported the trial court's reasonable conclusion that Appellant had violated this community-supervision condition. *See, e.g.*, *Jones v. State*, No. 02-12-00199-CR, 2013 WL 5675360, at *1 (Tex. App.—Fort Worth Oct. 17, 2013, no pet.) (mem. op., not designated for publication); *Miles v. State*, 343 S.W.3d 908, 913–14 (Tex. App.—Fort Worth 2011, no pet.); *cf. Morgan v. State*, 365 S.W.3d 706, 708–09 (Tex. App.—Texarkana 2012, no pet.) (holding evidence of disability sufficient to support conviction for injury to a disabled individual). We overrule point seven.

10

Although sufficient evidence of one violation is enough to support an adjudication and revocation, we will address Appellant's remaining sufficiency arguments in an abundance of caution. *See Joseph v. State*, 3 S.W.3d 627, 641 (Tex. App.—Houston [14th Dist.] 1999, no pet.).

### 2. Payment

In point three, Appellant asserts that the evidence was insufficient to show he failed to pay court costs, the supervision fee, and the sexual-offender fee because there was no allegation or showing that Appellant's failure to pay was intentional or that he had the ability to pay. *See* Tex. Code Crim. Proc. Ann. art. 42.12, § 21(c).

Richards testified that Appellant made some, but not all, monthly payments for fees and costs while on deferred adjudication community supervision. He further stated that Appellant held numerous jobs during this time. Appellant did not introduce evidence contradicting the fact that he was employed and was able to make monthly payments. The State showed by a preponderance that Appellant was able to pay and intentionally did not pay as ordered. Therefore, the trial court did not abuse its discretion by finding the nonpayment allegations true. *Cf. Brown v. State*, 354 S.W.3d 518, 520 (Tex. App.—Fort Worth 2011, pet. ref'd) (mem. op.) (finding trial court appropriately declined to revoke community supervision on failure-to-pay basis because State offered no evidence of ability to pay or that failure was intentional); *Corpus v. State*, 26 S.W.3d 660, 662 (Tex. App.—Corpus Christi 2000, no pet.) (applying prior version of section 21(c),

11

which provided inability to pay was affirmative defense that defendant must prove by a preponderance, and concluding evidence sufficient to show appellant intentionally failed to make required payments); *Joseph*, 3 S.W.3d at 641–42 (applying prior statute and concluding evidence sufficient to infer defendant's failure to pay was intentional). We overrule point three.

### 3. Habitual Use of Illegal Drug

In his fourth point, Appellant argues the evidence was insufficient to support the trial court's finding that he engaged in the habitual use of habit-forming drugs because his admitted cocaine use did not qualify as habitual. *See* Tex. Code Crim. Proc. Ann. art. 42.12, § 11(a)(2).

Appellant's community-supervision condition mandated that Appellant "[a]void injurious or vicious habits, namely alcoholic beverages, marihuana, narcotics or other habit-forming drugs." Richards testified that Appellant admitted he had been using cocaine for a month but did not tell Richards "exactly specifically how many times." Appellant is correct that a single use of an illegal drug cannot be characterized as a habit. *See Garcia v. State*, 571 S.W.2d 896, 900 (Tex. Crim. App. 1978). However, Appellant admitted to Richards that he had been using cocaine for a month. Further, even though there was evidence that Appellant had passed a drug test given the week before his admission, Richards explained that cocaine stays in a user's system only "for approximately two to three days," which would not rule out habitual use. Under the applicable preponderance standard and viewing the evidence in favor of the trial court's

12

finding, this evidence was sufficient to create a reasonable belief that Appellant did not avoid the injurious habit of cocaine use.[8] *See generally Hacker*, 389 S.W.3d at 865 (explaining preponderance-of-evidence standard). We overrule point four.

### 4. Successful Completion of Sexual-Abuse Program

In his sixth point, Appellant contends that the preponderance of the evidence did not show he violated the condition regarding successful completion of the sexual-abuse program because he was not allowed to attempt to complete the program "until [his] term of supervision has expired." This condition mandated that Appellant "shall remain in the Sexual Abuse Treatment Program until the program has been successfully completed, as determined by the treatment specialist(s), or until [Appellant's] term of supervision has expired." The determination of whether Appellant successfully completed the program was left to the discretion of the treatment specialists, and the evidence does not show that they abused their discretion in discharging Appellant from the program. *See Leonard v. State*, 385 S.W.3d 570, 577 (Tex. Crim. App. 2012). Appellant's

---

[8]We disagree with the State's argument that Appellant's single use of cocaine, if only a single use were proven, was sufficient to support adjudication and revocation because any use of cocaine would have violated the condition. The cases cited by the State are inapposite because the conditions in those cases clearly barred injurious habits as well as any use of illegal drugs. *See, e.g.*, *Chacon v. State*, 558 S.W.2d 874, 876 (Tex. Crim. App. 1977); *Kirk v. State*, No. 01-99-01184, 2001 WL 279211, at *1–2 (Tex. App.—Houston [1st Dist.] Mar. 22, 2001, no pet.) (not designated for publication). Appellant's condition was not so worded.

treatment specialist testified that Appellant was discharged from the program based on "a pattern of deliberate chronic violations that not only violated his stipulation of probation, his treatment agreement, but basically, he had committed new offenses." Because he was discharged, Appellant could not have stayed in the program until his supervisory period expired. In short, once Appellant was discharged, he was unable to attempt to complete the program before his supervisory period ended. The preponderance of the evidence was sufficient to support revocation on this basis. *See, e.g.*, *Newman v. State*, No. 07-10-00016-CR, 2011 WL 691624, at *2–3 (Tex. App.—Amarillo Feb. 28, 2011, no pet.) (mem. op., not designated for publication). We overrule point six.

### III. PROCEDURAL COMPLAINTS

#### A. DENIAL OF CONTINUANCE

In his first point, Appellant argues that the trial court abused its discretion by denying his October 18, 2007 sworn, written motion for continuance filed before the October 31, 2007 adjudication hearing. *See* Tex. Code Crim. Proc. Ann. arts. 29.06–.08 (West 2006). In order to show reversible error based on the denial of a pretrial motion for continuance, Appellant must show both that the trial court erred in denying the motion and that the lack of a continuance harmed him. *See Gonzales v. State*, 304 S.W.3d 838, 843 (Tex. Crim. App. 2010). Trial court error requires "a showing that the case made for delay was so convincing that no reasonable trial judge could conclude that scheduling and other considerations as well as fairness to the state outweighed the defendant's interest in delay of the

14

trial." *Id.* To establish harm, the record must show with "considerable specificity" how Appellant was harmed by the absence of more preparation time than he actually had. *Id.* at 842.

Appellant has failed to meet this high standard. The trial court explained its analysis behind the denial—multiple, previous delays at Appellant's request—which was reasonable and indicated that Appellant's case for delay did not outweigh other, valid considerations. *See, e.g.*, *Rogers v. State*, No. 14-12-00546-CR, 2013 WL 1867080, at *4–5 (Tex. App.—Houston [14th Dist.] May 2, 2013, no pet.) (mem. op., not designated for publication). Further, the record is not sufficiently specific to demonstrate that Appellant was harmed.[9] Appellant asserts in his brief that Perrett "may have conducted an . . . assessment and may have determined the IQ of [Appellant] prior to setting up the treatment program for him, thus explaining the reason [Appellant] appeared to have dropped in his performance after the program provider changed." This is too speculative to establish the requisite quantum of harm.[10] *See, e.g.*, *Harrison v. State*, 187 S.W.3d 429, 434 (Tex. Crim. App. 2005). We overrule point one.

---

[9]The court of criminal appeals has held that a motion for new trial, accompanied by an evidentiary hearing, usually is necessary to show harm from any trial court error in denying a motion for continuance. *See, e.g.*, *Gonzales*, 304 S.W.3d at 842–43. Appellant did not file a motion for new trial.

[10]We note that the evidence Appellant claims would have been introduced through Perrett's testimony—the lapses in Orozco's treatment—was admitted through Butler's testimony at the October 31 adjudication hearing. This further undermines Appellant's argument that he was harmed by the denial of a continuance.

15

## B. Denial of Closing Argument

In his second point, Appellant contends that the trial court abused its discretion by refusing to allow closing argument before the trial court imposed punishment. Neither Appellant nor his attorneys objected to the trial court's stated intention to decide punishment without closing arguments. Appellant asked for a continuance until Glickman could be present but did not indicate that he desired to make a closing argument to the trial court. We conclude Appellant has forfeited any error arising from the trial court's decision to decide punishment without closing arguments. *See Habib v. State*, 431 S.W.3d 737, 740–41 (Tex. App.—Amarillo 2014, pet. ref'd). *See generally* Tex. R. App. P. 33.1(a). We overrule point two.

## C. Modification of Condition

Appellant argues in his fifth point that the trial court abused its discretion by revoking his probation on the basis of the successful-completion condition because the condition was not properly modified to allow him to attend Orozco's treatment program instead of Perrett's treatment program.

First, because we have concluded that the preponderance of the evidence sufficiently supported the trial court's decision to revoke Appellant's community supervision on the basis of three other condition violations, the alleged failure to properly modify this condition would not result in relief to Appellant. *See, e.g.*, *Moore*, 605 S.W.2d at 926 (holding proof by a preponderance of one violation sufficient to support revocation order).

16

Second, the record reveals that Appellant attended the program approved by the county's community-supervision department as the condition required: "The Defendant is ordered to appear in person, as ordered by the Community Supervision and Corrections Department for treatment in *the* Sexual Abuse Treatment Program on an out-patient basis." [Emphasis added.] The county changed the approved provider of the program approximately one year after Appellant began participating in the program. The community-supervision condition required Appellant to participate in the program approved by the county's community-supervision department. Because the condition required Appellant to participate in the county's approved program, no modification was needed to compel Appellant to participate in the approved program when the county changed the approved provider of the program. *Cf.* Tex. Code Crim. Proc. Ann. art. 42.12, § 10(d) (allowing modification of community-supervision conditions if defendant is transferred to "different programs within the community supervision continuum of programs and sanctions"); *Witkovsky v. State*, 320 S.W.3d 425, 430–31 (Tex. App.—Fort Worth 2010, pet. ref'd, untimely filed) (op. on PDR) (concluding modification requirements of section 10 applied when State conceded probation officer transferred defendant from one approved treatment program to another program within continuum of county's approved treatment programs). We overrule point four.

## IV.  CONCLUSON

Finding no abuse of discretion and having overruled Appellant's points, we affirm the trial court's judgment.  *See* Tex. R. App. P. 43.2(a).


/s/ Lee Gabriel

LEE GABRIEL
JUSTICE

PANEL:  WALKER, MCCOY, and GABRIEL, JJ.

DO NOT PUBLISH
Tex. R. App. P. 47.2(b)

DELIVERED:  October 23, 2014