

# IN THE COURT OF CRIMINAL APPEALS
# OF TEXAS

## NO. PD-0337-09

**ROBERT L. GONZALES, Appellant**

**v.**

**THE STATE OF TEXAS**

### ON APPELLANT'S AND STATE'S PETITIONS
### FOR DISCRETIONARY REVIEW
### FROM THE SEVENTH COURT OF APPEALS
### LUBBOCK COUNTY

**PRICE, J., delivered the opinion for a unanimous Court.**

## O P I N I O N

Appellant was charged with and convicted of two counts of aggravated sexual assault against his eight-year-old daughter, the jury having found that he had both anal (Count I) and vaginal (Count II) intercourse with her during a single incident. On the morning that his jury trial was to commence, the appellant filed a motion for appointment of a medical expert to assist him in evaluating the State's medical evidence and a written motion for continuance so that he might have time to take full advantage of the assistance of that expert. The trial

court granted the motion for court-appointed expert, but denied the motion for continuance. In a motion for new trial, the appellant complained of the denial of the continuance. The trial court denied the motion for new trial without conducting a hearing. We granted petitions for discretionary review from both the appellant and the State to address, respectively, whether the trial court erred to deny the appellant's motion for new trial without first conducting a hearing, and whether the trial court violated the Fifth Amendment prohibition against double jeopardy by authorizing conviction, over the appellant's objection, for both counts of aggravated sexual assault.

## THE APPELLANT'S PETITION

### The Procedural Posture

The offenses are alleged to have occurred in July of 2005. The appellant was originally indicted in that same year and counsel was appointed to represent him. In April of 2006, the trial court granted original counsel's motion to withdraw. The trial court appointed new counsel to represent the appellant in May of 2006 and granted at least one defense motion for continuance. On November 7, 2006, the appellant was re-indicted. Trial commenced on January 22, 2007. By that time the appellant's new trial counsel had been on the case for more than eight months. On that same day—the first day of trial—the appellant filed an *ex parte* motion for the appointment of a medical expert. In the motion he alleged that his review of the child-victim's medical records "shows technical medical issues relating to the issue of penetration." For this reason, he contended, due process required the

appointment of a defense expert to help evaluate those medical records and assist trial counsel in preparing for trial. Also on the first day of trial, the appellant filed a written motion for continuance, incorporating his *ex parte* motion for expert assistance by reference and arguing that his "constitutional right to due process, right to confrontation of witnesses and cross examination of witnesses will be violated due to lack of a pretrial setting to incorporate [his] Ex Parte Motion."[1] At a brief hearing prior to commencement of voir dire, the trial court granted the appellant's motion for the appointment of an expert, but denied his motion for continuance.

After trial, the appellant filed a motion for new trial. He complained that the trial court's action in denying his motion for continuance "and in granting his motion regarding expert assistance only on the day of trial, deprived [him] of various of his constitutional rights." However, while the appellant remarked that trial "counsel with whom he proceeded to trial . . . was not his original counsel in this cause[,]" implying that there had been insufficient time to prepare for trial, he failed to note that his new trial counsel was appointed more than eight months prior to the actual trial date. He also conspicuously failed to mention that he had not filed his *ex parte* motion for appointment of an expert until the morning of trial. The trial court denied the appellant's motion for new trial without conducting an

[1] In his reply brief, the State Prosecuting Attorney argues that the appellant thus asserted that a continuance was necessary only in order to afford a "pretrial setting" at which he could establish the need for an expert, and that "[t]he trial court could have reasonably believed that appointing the expert obviated the need for either a pretrial hearing or a continuance." State's Reply Brief, at 7. We need not address this argument in view of our ultimate disposition of the appellant's petition.

evidentiary hearing.

On appeal, the appellant complained, *inter alia*, that the trial court abused its discretion to deny his motion for new trial without first holding a hearing. In an unpublished opinion, the Seventh Court of Appeals disagreed.[2] The court of appeals held that "all of the allegations raised in appellant's motion for new trial were determinable from the trial record and accordingly, we find no abuse of discretion."[3] Albeit for reasons different than those assigned by the court of appeals in its unpublished opinion, we agree that the trial court could have determined the merits of the appellant's motion for new trial wholly from the record and that it was therefore not an abuse of discretion for the trial court to deny the motion for new trial *sans* hearing.[4]

### Analysis

We recently reiterated the applicable standard of appellate review:

> When examining a trial court's denial of a hearing on a motion for new trial, we review for an abuse of discretion. In so doing, we reverse only when the trial judge's decision was so clearly wrong as to lie outside that zone within which reasonable persons might disagree. And in the absence of [such] an abuse of discretion this Court would not be justified in reversing the judgment. Our review, however, is limited to the trial judge's determination

---

[2] *Gonzales v. State*, No. 07-07-0036-CR, 2009 WL 498032 (Tex. App.—Amarillo, delivered February 27, 2009) (not designated for publication).

[3] *Id*. at *3.

[4] The court of appeals alternatively held that the appellant failed to request a hearing on his motion for new trial. *Id*. at *4. Our ultimate disposition of the appellant's petition on the merits obviates the need to address this alternative, procedural default rationale.

of whether the defendant has raised grounds that are both undeterminable from the record and reasonable, meaning they could entitle the defendant to relief. This is because the trial judge's discretion extends only to deciding whether these two requirements are satisfied. If the trial judge finds that the defendant has met the criteria, he has no discretion to withhold a hearing. In fact, under such circumstances the trial judge abuses his discretion in failing to hold a hearing.[5]

In the instant case, we need not decide whether the appellant's pleading presented reasonable grounds to justify a new trial. We conclude that the appellant's claim could be resolved on the basis of the existing record and that the trial court was fully justified in denying the appellant's motion for new trial without recourse to further factual development in an evidentiary hearing.

The appellant argues that he needed an evidentiary hearing in order to establish how he was harmed by the trial court's failure, after affording him an appointed expert, to also afford that expert a reasonable opportunity, prior to trial, to review the child-victim's medical records so that he could help counsel prepare for trial. It is certainly the case that, in order to prevail on his motion for new trial, a defendant must demonstrate that the trial court's failure to grant his pretrial motion for continuance prejudiced him. As Professors Dix and Dawson point out in their treatise:

> Denial of [a pretrial motion for delay or continuance] will be found an abuse of discretion on appeal only if the record shows with considerable specificity how the defendant was harmed by the absence of more preparation time than he actually had. This showing can ordinarily be made only at a

---

[5] *Smith v. State*, 286 S.W.3d 333, 339-40 (Tex. Crim. App. 2009) (internal quotation marks and footnotes omitted).

hearing on a motion for new trial, because almost always only at that time will the defendant be able to produce evidence as to what additional information, evidence or witnesses the defense would have had available if the motion for delay had been granted.[6]

Establishing harm, however, while necessary, is not a sufficient prerequisite to obtaining appellate relief. A defendant must preliminarily demonstrate that the trial court erred to deny the pretrial continuance in the first place. Professors Dix and Dawson continue:

> In addition to this necessary showing of harm, an appellant must apparently also show that the trial judge's ruling on the motion was error. This most likely requires a showing that the case made for delay was so convincing that no reasonable trial judge could conclude that scheduling and other considerations as well as fairness to the State outweighed the defendant's interest in delay of the trial. Appellate courts have not addressed this, however, because convicted defendants have never [been] able to make the necessary specific showing of harm.[7]

We now explicitly hold that, in order to show reversible error predicated on the denial of a pretrial motion for continuance, a defendant must demonstrate both that the trial court erred in denying the motion and that the lack of a continuance harmed him. In a motion for new trial, he should allege facts tending to establish both prongs—error and harm. In ruling on the appellant's motion for new trial in this case, if the trial judge could make a determination based on the existing record that he had not *erred* to deny the appellant's pretrial motion for continuance, he was not required to hold a hearing in order to make a record with respect to

---

[6] George E. Dix & Robert O. Dawson, 42 TEXAS PRACTICE: CRIMINAL PRACTICE AND PROCEDURE § 28.56 (2d ed. 2001), at 532-33.

[7] *Id*. at 533.

whether the appellant was *harmed*.

Here, the trial court was fully justified in concluding that it had not erred to deny the appellant's pretrial motion for continuance. In *Wright v. State*,[8] which involved an appeal from a capital-murder conviction, the appellant argued that the trial court erred to deny his motion for continuance to allow defense experts to evaluate the State's DNA evidence. In *Wright*, as here, the appellant did not complain of a lack of expert assistance, but only that his experts lacked sufficient time to provide adequate assistance. But there, as here, the appellant failed to request the appointment of an expert until the first day of trial. We rejected the appellant's claim, finding that Wright had failed to establish prejudice but adding that, "even if [he] could point to specific prejudice under this point of error, he would not now be allowed to profit from his own failure to act."[9]

In essence, *Wright* injects a diligence requirement as a precondition for a continuance based upon the need for additional trial preparation. A motion for continuance based upon the unavailability of a *witness* is expressly governed by statute and must "state" the diligence used to secure the presence of the missing witness for trial.[10] There is no comparable statutory provision that governs a pretrial motion for continuance for the purpose of securing

---

[8] 28 S.W.3d 526 (Tex. Crim. App. 2000).

[9] *Id*. at 533.

[10] *See* TEX. CODE CRIM. PROC. art. 29.06(2) (a first motion for continuance requesting delay "on account of the absence of a witness" must "state" "[t]he diligence which has been used to procure his attendance[.]").

expert assistance. But that just means that the resolution of such a motion is "*particularly* within the discretion of the trial court."[11] Here, the appellant made no attempt in his pretrial motion for continuance to explain why he could not have requested expert medical assistance sooner than the first day of trial. We are unable to say that the trial court would have abused its discretion to require the motion for continuance to contain an allegation of diligence in seeking expert assistance in a sufficiently timely manner as to avoid the necessity to delay a trial setting. The trial judge could reasonably have rejected the appellant's motion for continuance because it failed to state either the diligence the appellant exercised in trying to obtain expert assistance sooner or, alternatively, how circumstances conspired to prevent him from realizing any earlier that he required such assistance. The trial court did not need to hold a hearing on the motion for new trial in order to determine that it had not erred to deny the appellant's motion for continuance, and it therefore did not abuse its discretion.

## THE STATE'S PETITION

### The Procedural Posture

The appellant has been twice convicted for what he contends is the same offense in the course of a single prosecution. The question is whether the Legislature intended that he could be subjected to such multiple punishments. The court of appeals recognized that the

---

[11] *See* Dix & Dawson, *supra*, at 531 (emphasis added) ("A request for delay to permit further investigation or other preparation for trial is based on nonstatutory and therefore equitable grounds. It is particularly within the discretion of the trial court. Denial of a motion on these grounds will be held reversible error on appeal from a conviction only if the trial judge is found to have abused his discretion.").

double-jeopardy issue devolves into a question of legislative intent.[12] The court of appeals ultimately concluded that, because both theories of aggravated assault (anal and vaginal penetration) are contained in the same subsection of the penal provision, the Legislature must have considered them to be the "same" for double-jeopardy purposes.[13] The court of appeals therefore set aside the appellant's conviction under Count II of the indictment, alleging vaginal penetration.[14] The State, via the State Prosecuting Attorney (SPA), now contends that the court of appeals overemphasized the formal structure of the statute to the detriment of other relevant, and ultimately determinative, considerations. We agree.

**The Law**

In relevant part, Section 22.021 of the Penal Code provides:

    (a) A person commits an offense:

        (1) if the person:

                * * *

        (B) intentionally or knowingly:

        (i) causes the penetration of the anus or sexual organ of a child by any means;

        (ii) causes the penetration of the mouth of a child

---

[12] *Gonzales v. State*, *supra*, at \*5.

[13] *Id*. at \*6.

[14] *Id*. at \*7.

by the sexual organ of the actor;

ii) causes the sexual organ of a child to contact or penetrate the mouth, anus, or sexual organ of another person, including the actor;

(iv) causes the anus of a child to contact the mouth, anus, or sexual organ of another person, including the actor; or

(v) causes the mouth of a child to contact the anus or sexual organ of another person, including the actor; and

(2) if:

* * *

(B) the victim is younger than 14 years of age[.][15]

In this case, the appellant was convicted and sentenced in a single prosecution under two theories of aggravated sexual assault—anal and vaginal penetration—both emanating from the same subsection of the statute (Section 22.021(a)(1)(B)(i)), and committed during the same transaction. The court of appeals held that this constituted two punishments for the same offense, in violation of the Double Jeopardy Clause.

The Double Jeopardy Clause of the Fifth Amendment, applicable to the states through the Fourteenth Amendment,[16] protects an accused against a second prosecution for the same

---

[15] TEX. PENAL CODE § 22.021.

[16] *Brown v. Ohio*, 432 U.S. 161, 164 (1977).

offense for which he has been previously acquitted or previously convicted.[17] It also protects him from being punished more than once for the same offense in a single prosecution.[18] Sameness in this latter context is purely a matter of legislative intent.[19] "With respect to cumulative sentences imposed in a single trial, the Double Jeopardy Clause does no more than prevent the sentencing court from prescribing greater punishment than the legislature intended."[20] The traditional indicium of that legislative intent is the so-called "same elements" test of *Blockburger v. United States*.[21] According to that test, it should be presumed that the Legislature did not regard two statutorily defined offenses to be the same so long as "each provision requires proof of a fact which the other does not."[22] However, for purposes of multiple-punishment analysis, the *Blockburger* test is only a tool of statutory construction—and not even an exclusive one.[23] An accused may be punished for two

---

[17] *Id*. at 165.

[18] *Id*.

[19] *Missouri v. Hunter*, 459 U.S. 359, 368 (1983); *Ex parte Kopecky*, 821 S.W.2d 957, 959 (Tex. Crim. App. 1992).

[20] *Missouri v. Hunter*, *supra*, at 366.

[21] 284 U.S. 299 (1932).

[22] *Id*. at 304.

[23] *Villanueva v. State*, 227 S.W.3d 744, 747 (Tex. Crim. App. 2007); *Garza v. State*, 213 S.W.3d 338, 351-52 (Tex. Crim. App. 2007).

offenses even though they would be regarded as the same under a *Blockburger* analysis if the Legislature has otherwise made manifest its intention that he should be.

In *Ex parte Ervin*,[24] we recognized that "[t]he *Blockburger* test's status as a mere rule of statutory construction raises an inverse conclusion as well: the *Blockburger* test cannot authorize two punishments where the legislature clearly intended only one."[25] Thus, even if a straightforward application of the *Blockburger* test would suggest that two offenses are not the "same" for double-jeopardy purposes, if other indicia manifest a legislative intent that an accused not be punished for both offenses if they occur in the course of a single transaction, then an accused may not be punished for both offenses. *Ervin* provided a non-exclusive catalog of considerations to help courts determine legislative intent in this context:

> whether the offenses['] provisions are contained within the same statutory section, whether the offenses are phrased in the alternative, whether the offenses are named similarly, whether the offenses have common punishment ranges, whether the offenses have a common focus (i.e. whether the "gravamen" of the offense is the same) and whether that common focus tends to indicate a single instance of conduct, . . . and whether there is legislative history containing an articulation of an intent to treat the offenses as the same or different for double jeopardy purposes.[26]

In its analysis in the instant case, the court of appeals found all of the *Ervin* considerations to support a conclusion that the Legislature intended that penetration of the anus and sexual

---

[24] 991 S.W.2d 804 (Tex. Crim. App. 1999).

[25] *Id*. at 807.

[26] *Id*. at 814.

organ should constitute the same offense for jeopardy purposes.

The SPA challenges the court of appeals's conclusion with respect to two of those considerations. First, the court of appeals opined that "[t]he focus of the offenses is the same: penetration of the child's genital area."[27] Second, the court of appeals found particularly significant that the Legislature could not, in the court of appeals's view, have intended "to provide multiple punishments for two acts falling under a single subsection" of the same statute. We agree with the SPA that the court of appeals: (1) overgeneralized to declare that the focus of the relevant subsection of the aggravated sexual assault statute to be "penetration of the child's genital area"; and (2) overemphasized the fact that anal and vaginal penetration are proscribed by the same subsection of the statute.

## Analysis

Six weeks after we issued our opinion in *Ex parte Ervin*, we handed down *Vick v. State*.[28] In *Vick*, we addressed a slightly different issue than the one presented in the instant case. Vick had been convicted in separate prosecutions for two instances of aggravated sexual assault under different subsections of Section 22.021 that occurred during the same transaction.[29] In the first prosecution, he was acquitted of causing the penetration of the

---

[27] *Gonzales v. State*, *supra*, at *6.

[28] 991 S.W.2d 830 (Tex. Crim. App. 1999).

[29] *Id*. at 831.

victim's sexual organ with his own (Section 22.021(a)(1)(B)(i)). In the second prosecution,

he was again charged with aggravated sexual assault, stemming from the same transaction,

but this time it was alleged that he caused the victim's sexual organ to contact his mouth

(Section 22.021(a)(1)(B)(iii)).[30] The trial court granted Vick's motion to dismiss the second

indictment on double-jeopardy grounds.[31] The State appealed, but the court of appeals held

that the alternative ways of committing aggravated sexual assault that are set out in the

various subsections of Section 22.021 constitute alternative methods of committing the same

offense, not separate offenses for double-jeopardy purposes.[32]

When the State petitioned this Court for discretionary review, we reversed. We held

that the various subsections of Section 22.021 define separate offenses, summarizing that:

> Sec. 22.021 is a conduct-oriented statute; it uses the conjunctive "or" to
> distinguish and separate different conduct; and its various sections specifically
> define sexual conduct in ways that usually require different and distinct acts
> to commit. These considerations lead us to conclude that the Legislature
> intended that each separately described conduct constitutes a separate statutory
> offense.[33]

Because the separate subsections defined separate offenses, we found no double-jeopardy

violation in prosecuting Vick a second time under a different subsection of the statute than

---

[30] *Id*.

[31] *Id*.

[32] *Id*. at 832.

[33] *Id*. at 833.

the subsection under which he had been previously acquitted.

The differences between *Vick* and the instant case are two-fold. First, *Vick* was a multiple-prosecution case, and not, as here, a multiple-punishment case. But what we said about legislative intent with respect to multiple prosecution would apply with at least as much force in the multiple-punishment context, wherein the *Blockburger* test is merely presumptive while legislative intent is absolutely determinative. If the Legislature intended different subsections of the aggravated sexual assault statute to constitute separate offenses for purposes of whether an accused may be twice *prosecuted* for the "same" offense, it would have harbored no different intent for purposes of whether he may be twice *punished*. The second difference between *Vick* and this case is, therefore, the more crucial. In *Vick*, the separate theories of aggravated sexual assault emanated from separate subsections of Section 22.021. Here, the separate theories derive from the *same* subsection. From this fact, the court of appeals deduced that the two theories constituted separate manner and means of committing the same offense under Section 22.021(a)(1)(B)(i), and therefore concluded that the appellant could not constitutionally be punished for committing both.

But our reasoning in *Vick* did not necessarily turn on the fact that the separate theories of aggravated sexual assault were incorporated in separate *subsections* of the statute. Otherwise, we could not have later observed, as we did in *Haight v. State*,[34] in the course of construing and applying *Vick*, that another penal code provision's "various *phrases* and

---

[34] 137 S.W.3d 48 (Tex. Crim. App. 2004).

subsections separated by the disjunctive 'or,' . . . [are] at least some indication that any one of the prohibited types of conduct would constitute a separate offense."[35] This observation reflects our understanding that, at least for a nature-of-conduct type of penal provision, the separately defined acts that are proscribed therein typically evince a legislative intent that they be construed to constitute separate offenses, not mere manner and means of committing a single offense. Beyond this, the observation in *Haight* also reflects our understanding that this identifier of legislative intent is not limited to separate acts as defined in separate *subsections* of such a nature-of-conduct penal provision. In construing such a provision, we may appropriately infer that the Legislature intended to create separate offenses for double-jeopardy purposes by virtue of the fact that it chose to proscribe separate acts in *separate phrases, even within the same subsection*, so long as those phrases are disjunctive and embrace discretely prohibited acts.

More recently, we have signaled that the "focus" or "gravamen" of a penal provision should be regarded as the "best" indicator when it comes to determining whether the Legislature intended to define more than one offense. The question in *Huffman v. State*,[36] was whether the Legislature intended to create more than one offense for jury-unanimity purposes. Observing that double-jeopardy and jury-unanimity issues constitute "closely

---

[35] *Id*. at 50 (emphasis added).

[36] 267 S.W.3d 902 (Tex. Crim. App. 2008).

intertwined strands of our jurisprudence[,]"[37] we surveyed a number of our previous decisions from both strands, including *Vick*, and concluded:

> The common thread in all of these cases seems to be "focus." We use grammar and we look to other factors bearing on whether different legal theories constitute the 'same' offense or 'different' offenses, but those tools seem useful mainly as an aid to determining focus. The focus or 'gravamen' of the offense seems to be one of the best indicators of the allowable unit of prosecution prescribed by the legislature. If the focus of the offense is the result—that is, the offense is a 'result of conduct' crime—then different types of results are considered to be separate offenses, but different types of conduct are not. On the other hand, if the focus of the offense is the conduct—that is, the offense is a 'nature of conduct' crime—then different types of conduct are considered to be different offenses.[38]

In *Vick*, we recognized that the aggravated sexual assault statute defines a "conduct-oriented"crime.[39] It follows from that observation that the different types of conduct that are proscribed in that statute should ordinarily be regarded as different offenses for purposes of the Double Jeopardy Clause, absent a more conclusive or compelling sign of contrary legislative intent such as an explicit expression in the statute itself that such offenses should

---

[37]

*Id.* at 905; *see also Villanueva v. State*, *supra*, at 747 ("We doubt that the Legislature would have meant for us to construe the 'act or omission' alternative of Section 22.04(a) of the Penal Code as merely alternative means of committing the same offense for jury-unanimity purposes, but as full-blown separate offenses, authorizing multiple punishments, for purposes of double jeopardy analysis."); *Gamboa v. State*, 296 S.W.3d 574, 583 (Tex. Crim. App. 2009) (jury unanimity and double jeopardy "address the same basic question").

[38]

*Huffman v. State*, *supra*, at 907.

[39]

*Vick v. State*, *supra,* at 832.

be subject to only one punishment if they stem from a single incident or transaction.[40]

The court of appeals was not wholly unmindful of our emphasis on the focus of a penal provision in determining legislative intent *vis-à-vis* allowable units of prosecution from a single statute. Pointing to language from *Vick* itself, the court of appeals concluded that the focus of each of the alternative theories of aggravated sexual assault contained in Subsection 22.021(a)(1)(B)(ii) "is the same: penetration of the child's genital area."[41] And it is true that we said as much in *Vick*.[42] But we said so in the context of describing the distinctions among the various *subsections* of the statute, in order to illustrate that each subsection "entails different and separate acts to commit the various, prohibited conduct."[43] We went on to observe that "this specificity [within the subsections of the statute] reflects the legislature's intent to separately and distinctly criminalize any act which constitutes the proscribed conduct."[44] What is true of the various acts specified in the different *subsections*

---

[40] *Compare, e.g., Garza v. State, supra,* at 351-52 (although application of *Blockburger* test suggested that two offenses were the same for double-jeopardy purposes, statutory language providing that an accused could be punished for both constituted sufficiently clear indicium of legislative intent as to defeat *Blockburger* presumption).

[41] *Gonzales v. State, supra,* at *6.

[42] *See Vick v. State, supra,* at 833 ("Section (i) prohibits penetration of a male or female child's anus or the sexual organ of a female child. The focus is on penetration of the child's genital area.")

[43] *Id*.

[44] *Id*.

of this nature-of-conduct statute is no less true of the various acts specified within separate and disjunctive *phrases* in the *same* subsection.[45] Either way, such specificity in a conduct-oriented statute ordinarily reflects a legislative intent that each discretely defined act should constitute a discrete offense. Penetration of the anus constitutes a discrete act from penetration of the sexual organ, even if they occur within a short period of time. That both the anus and sexual organ may be anatomically located in the "genital area" does not render the separate acts of penetration the "same" offense for double-jeopardy purposes. The court of appeals erred to conclude otherwise.

Accordingly, we hold that there was no double-jeopardy violation when the appellant was convicted under both Count I and Count II of the indictment. The Legislature intended that penetration of a child's anus should be regarded as a distinct offense from penetration of her sexual organ even if they occur during the course of the same incident or transaction. Because the appellant has suffered no greater punishment than the Legislature intended, the Double Jeopardy Clause is not implicated.

**CONCLUSION**

We affirm the judgment of the court of appeals insofar as it affirmed the appellant's conviction with respect to Count I of the indictment. We reverse the judgment of the court of appeals to the extent that it set aside Count II of the indictment. We remand the cause to

---

[45]

*Haight v. State*, *supra*. *See also Pizzo v. State*, 235 S.W.3d 711, 718 (Tex. Crim. App. 2007) (holding that three disjunctive phrases contained within same subsection of indecency-with-a-child statute specified three separate offenses for jury-unanimity purposes, *citing Vick*).

the court of appeals for disposition of the appellant's third point of error on appeal, pertaining to his conviction under Count II of the indictment, which the court of appeals declined to reach on original submission because of its erroneous dismissal of Count II on double-jeopardy grounds.

DELIVERED:      February 24, 2010
PUBLISH