**AFFIRM; and Opinion Filed October 30, 2014.**



In The

# Court of Appeals
# Fifth District of Texas at Dallas

### No. 05-13-01191-CR

### DONALD LEWIS WASHINGTON, Appellant
### V.
### THE STATE OF TEXAS, Appellee

**On Appeal from the Criminal District Court No. 1**
**Dallas County, Texas**
**Trial Court Cause No. F-1353040-H**

## MEMORANDUM OPINION

Before Justice FitzGerald, Justice Fillmore, and Justice Stoddart
Opinion by Justice Fillmore

A jury found appellant Donald Lewis Washington guilty of theft, enhanced by two prior theft convictions. Washington's conviction for state-jail felony theft was punished as a second-degree felony as a result of prior felony convictions for burglary of a habitation. The trial court sentenced Washington to twelve years' confinement. In a single point of error, Washington contends the trial court abused its discretion by denying his motion for continuance. We affirm the trial court's judgment.

### Procedural Background

Washington was indicted for an alleged February 28, 2013 theft of a ladder and a bicycle with a value of less than $1,500. The indictment included two enhancement paragraphs based on Washington's August 16, 2007 and June 28, 2006 theft convictions. The trial court approved Washington's stipulation as to those prior theft convictions.

Washington pleaded not guilty to the February 28, 2013 theft. The record reflects that trial commenced shortly after 11:00 a.m. on August 12, 2013. The State announced ready for trial. Washington's counsel announced to the trial court that "we're not ready for trial" and "[w]e'd like to request a continuance of the trial." The trial court stated it had granted Washington a continuance "last time," and denied Washington's oral motion for continuance. Washington's written "Second Motion for Continuance" filed on the day of trial included the following:

> I. This case is set for trial on August 12, 2013. Prior to that date the defense has requested pre-trial discovery from the Dallas County District Attorney's Office. The prosecutor for the State provided written material, including the prosecution report and the Dallas Police Incident Reports.
> On Saturday, August 10, 2013, the State prosecutor emailed defense counsel and informed the defense that the State had in its possession a recorded statement of the Defendant, which was taken at the police station at the time of the arrest.
> Later that evening of August 10, 2013 the prosecutor emailed the video of the statement to defense counsel. Defense counsel was unable to play the video on any of his computer equipment.
> Defense counsel was handed a copy of the video on DVD on August 12, 2013 before trial. Defense counsel was allowed to watch the video on the State's computer while a jury panel waited in the hall was [sic] outside the courtroom.
> The video displayed the Defendant explaining where the alleged stolen items came from; the information on the video is exculpatory, that is, the alleged stolen items came from a vacant house near a trash pile.
> II. The Defense respectfully requests a continuance to investigate the information contained on the video, as it could lead to further exculpatory evidence that if believed by the jury, could exonerate the Defendant.
> III. In addition the Defendant does not want to proceed to trial. The Defendant has only assisted the defense counsel in a limited manner. The Defendant is not comfortable proceeding to trial with this defense lawyer at this time.

*See* TEX. CODE CRIM. PROC. ANN. arts. 29.03 (West 2006) ("A criminal action may be continued on the written motion of the State or of the defendant, upon sufficient cause shown; which cause shall be fully set forth in the motion."); 29.08 (West 2006) ("All motions for continuance must be sworn to by a person having personal knowledge of the facts relied on for the continuance."). Washington orally reurged his written motion for continuance "for the

reasons . . . stated in the motion," and the trial court again orally denied the motion for continuance. The record contains a signed order denying Washington's Second Motion for Continuance.

A jury found Washington guilty of theft, enhanced by two prior theft convictions, as charged in the indictment. *See* TEX. PENAL CODE ANN. § 31.03(e)(4)(D) (West Supp. 2014) (except as provided by section 31.03(f), which is inapplicable here, offense is a state jail felony if the value of the property stolen is less than $1,500 and defendant has been previously convicted two or more times of any grade of theft). Washington's conviction for state-jail felony theft was punished as a second-degree felony as a result of prior felony convictions for burglary of a habitation. *See* TEX. PENAL CODE ANN. §§ 12.425(b) (West Supp. 2014); 30.02(c)(2) (West 2011).

Before trial, the State filed notice of its intention to submit punishment enhancement paragraphs relating to Washington's February 28, 2008 and December 12, 1994 convictions for burglary of a habitation. During the punishment phase of the trial, Washington pleaded true to the burglary-of-a-habitation convictions. The trial court sentenced Washington to twelve years' confinement. *See* TEX. PENAL CODE ANN. § 12.33 (West 2011) (applicable range of punishment for second-degree felony is imprisonment for "any term of not more than 20 years or less than 2 years").

Washington's motion for new trial was denied. Washington appealed his theft conviction. In his sole point of error, Washington contends the trial court abused its discretion by denying his motion for continuance.

**Evidence at Trial**

Gene Hernandez, a customer service technician for AT&T, testified that, on the morning of February 28, 2013, he was working in the alley behind Lindbergh Drive, in Dallas, Texas

when he saw a man walking in his direction. The man then turned and walked between two houses and disappeared from Mr. Hernandez's view. Emerging later from that location was a man dressed the same as the individual observed earlier but with his "arms full." Mr. Hernandez called 9-1-1 to report what he believed to be suspicious activity. Mr. Hernandez used his iPad to take photographs of the man carrying something, and those photographs were admitted in evidence.

Ana Hernandez[1] testified that on February 28, 2013, her son's bicycle and her ladder were on the porch of her home, and a person would have had to come through the gate of the fence at her home to take possession of the bicycle and the ladder. Mrs. Hernandez testified that items she is discarding are not left on her porch; instead, she places such items in the alley in the back of her home where garbage is collected. On the day of the offense, there were items of personal property on the porch, including several bicycles, that would have indicated the home was occupied. She identified photographs of her son's bicycle and a ladder that belonged to her. Mrs. Hernandez did not know the bicycle and ladder had been taken from her porch until officers with the Dallas Police Department came to her home and asked if anything was missing. Mrs. Hernandez ascertained that her son's green bicycle and a ladder were missing, and she informed the police officers. The police officers advised Mrs. Hernandez that an individual had been placed under arrest for taking the bicycle and the ladder, and the individual who had been arrested was in a patrol car in the alley behind Mrs. Hernandez's home. Sometime after February 28, 2013, Mrs. Hernandez realized a lawn mower that had been in her backyard was missing. She did not know if the lawn mower had been taken at the same time as the ladder and bicycle.

---

[1] Gene Hernandez and Ana Hernandez are not related to one another.

On February 28, 2013, Dallas Police Officer Daniel Mettica was on duty in the area where the offense occurred, an area Mettica testified is beset with property crime, drug activity, and prostitution. Mettica was in a covert capacity, meaning he was dressed in plain clothes and driving an unmarked vehicle. At approximately 10:00 a.m. that morning, he received a call regarding suspicious activity. Mettica learned that a telephone repairman saw an African-American male dressed in all black walking with a ladder in the alley of Lindbergh Drive. Upon arrival at the location, Mettica began looking for the suspect. Mettica's partner, Officer Donovan Kuhlmann, was also in a covert capacity and arrived at the location in another vehicle. Kuhlmann observed the individual he believed to be the suspect walking along a street near Lindbergh Drive. Kuhlmann provided Mettica information about the route the suspect was walking. Mettica positioned his vehicle where he could see the suspect as he walked between houses and then onto the sidewalk adjacent to Lindbergh Drive. Mettica saw something in Washington's hands. Washington walked past Mettica's vehicle and entered an alley, at which point Mettica lost sight of him. A few moments later, Mettica saw Washington emerging from the alley carrying a green bicycle. Mettica communicated by radio to uniformed police officers patrolling in the area a request that those officers stop Washington. Before the uniformed police officers were able to make contact with Washington, he again walked between houses. Washington then proceeded to a field near Lindbergh Drive and put the bicycle down near a tree. Washington picked up the ladder that was there. The uniformed police officers then made contact with Washington, took possession of the ladder, and retrieved the bicycle from the field. Mettica testified that in order to locate the individual from whom the bicycle and ladder were taken, the police officers went to the alley Washington had walked into, and after a few minutes of going from house-to-house, the police officers identified the individual who owned the bicycle and ladder. Washington did not admit he stole the bicycle; he said the bicycle was abandoned.

–5–

Washington told the police officers he had gotten the bicycle from a vacant house that was under renovation. Washington told the police officers he would show them the location of the vacant home from which he took the bicycle. Mettica identified Washington at trial as the suspect.

Kuhlmann testified that, on February 28, 2013, he was working in a covert capacity. Around 10:00 a.m., he received a dispatch regarding a suspicious person described as an African-American male wearing a black beanie, black jacket, and black pants. After arriving at the area where the suspicious person had been seen, Kuhlmann saw a man walking who matched the description. Kuhlmann notified Mettica that he had located the probable suspect. Kuhlmann identified Washington at trial as the suspect he observed. Washington walked through an open field into the neighborhood. Mettica saw Washington at that point and observed Washington walk into an alley and emerge from the alley carrying a bicycle. Mettica relayed that information over the radio to Kuhlmann and other police officers. Washington then walked between houses and back toward the open field. Kuhlmann observed Washington carrying a bicycle. Washington put the bicycle down in an area of two trees. Washington picked up a ladder and walked through the field. Washington was then stopped by a uniformed Dallas Police Officer. Kuhlmann observed the uniformed police officer arrest Washington and place him in the police vehicle. Kuhlmann was told by his supervisor that Washington identified for police officers the house from which he took the bicycle.

Officer Jeff Wiginton of the Dallas Police Department testified that, on February 28, 2013, he was working as a field training officer with Officer Gary Green, a police recruit. They received a dispatch at 10:05 a.m. regarding a suspicious person. Green contacted the person who had made the 9-1-1 telephone call regarding suspicious activity. The caller informed Green that while working in an alley, he observed an African-American male wearing a jacket entering the alley and walking between houses. The caller advised that he later saw the African-American

male walking between the houses and toward a field carrying a ladder and some other object. Using his iPad, the caller photographed the African-American male. Wiginton testified that he and Green contacted covert police officers in the area. The covert officers, who had also heard the dispatch regarding suspicious activity, responded to the dispatch. The covert officers attempted to locate the suspect while Wiginton and Green remained out of sight. Mettica saw the suspect coming out of an alley with a bicycle, and Mettica requested that Wiginton and Green intercept and stop the suspect. Wiginton saw a Black male carrying a small, green bicycle walking between houses and toward the field. At trial, Wiginton identified Washington as the person he observed carrying the bicycle. Wiginton and Green drove around to intercept Washington. When they saw Washington, he was carrying a ladder across the street. Wiginton identified the ladder Washington was carrying in a photograph entered into evidence. Wiginton also testified that the bicycle shown in a photograph entered into evidence looks like the bicycle he saw Washington carrying. Wiginton placed Washington in custody. With Washington in his police vehicle, Wiginton drove to the alley behind Mrs. Hernandez's house off of Lindbergh Drive in an attempt to determine the location from which the bicycle and ladder had been taken. Neither Wiginton nor Green spoke with Washington about where he had taken possession of the ladder and bicycle. Wiginton and Green knew the bicycle had to have come from one of the houses in the area or somewhere in the alley. Sergeant Grajeda of the Dallas Police Department made contact with Mrs. Hernandez, and Grajeda also spoke with Washington.

## Motion for Continuance

In his sole point of error, Washington asserts the trial court abused its discretion by denying his motion for continuance filed the day of trial. Washington argues that his counsel needed additional time to investigate his claim made in the videotaped police interview that the

allegedly stolen ladder and bicycle were found at an abandoned house near a trash pile.[2]

According to Washington, if his motion for continuance had been granted, his counsel would have had time to investigate and possibly find evidence that the ladder and bicycle were taken by another who left them at a vacant house where the items were found by Washington. Washington argues that the denial of the motion for continuance prevented him from presenting a full defense at trial.

To show reversible error due to the denial of a motion for continuance, a defendant must demonstrate both that the trial court erred by denying the motion and that the lack of a continuance harmed him. *Gonzales v. State*, 304 S.W.3d 838, 842–43 (Tex. Crim. App. 2010). Prejudice is demonstrated from the lack of continuance "only if the record shows with considerable specificity how the defendant was harmed by the absence of more preparation time than he actually had." *Id.* at 842 (quoting GEORGE E. DIX & ROBERT O. DAWSON, 42 TEXAS PRACTICE: CRIMINAL PRACTICE AND PROCEDURE § 28.56 (2d ed. 2001), at 532). This showing "can ordinarily be made only at a hearing on a motion for new trial, because almost always only at that time will the defendant be able to produce evidence as to what additional information, evidence or witnesses the defense would have had available if the motion for delay had been granted." *Gonzales*, 304 S.W.3d at 842–43 (quoting 42 TEXAS PRACTICE: CRIMINAL PRACTICE AND PROCEDURE § 28.56, at 532–33).[3] In addition to his showing of harm, the defendant must also establish the trial court's ruling on the motion for continuance was error. *Id.* at 843. "This most likely requires a showing that the case made for delay was so convincing that no reasonable trial judge could conclude that scheduling and other considerations as well as fairness to the

---

[2] The videotaped interview of Washington at the time of his arrest is not in the appellate record.

[3] The record on appeal contains no indication that a hearing was conducted on Washington's motion for new trial.

State outweighed the defendant's interest in delay of the trial." *Id*. (quoting 42 TEXAS PRACTICE: CRIMINAL PRACTICE AND PROCEDURE § 28.56, at 533).

Here, the information contained in the videotaped police interview was known to Washington, as it was his own statement to the police that the ladder and bicycle were found near an abandoned house. The February 28, 2013 police interview occurred over five months before the trial commenced on August 12, 2013. Further, Washington's counsel elicited testimony at trial from Mettica that Washington stated the bicycle had been abandoned. Accordingly, Washington has failed to establish he was prejudiced by the trial court's denial of the motion for continuance.

We resolve Washington's sole point of error against him. We affirm the trial court's judgment.

/Robert M. Fillmore/
ROBERT M. FILLMORE
JUSTICE

Do Not Publish
TEX. R. APP. P. 47

131191F.U05



## Court of Appeals
## Fifth District of Texas at Dallas

## JUDGMENT

DONALD LEWIS WASHINGTON,
Appellant

No. 05-13-01191-CR     V.

THE STATE OF TEXAS, Appellee

On Appeal from the Criminal District Court
No. 1, Dallas County, Texas,
Trial Court Cause No. F-1353040-H.
Opinion delivered by Justice Fillmore,
Justices FitzGerald and Stoddart
participating.

Based on the Court's opinion of this date, the judgment of the trial court is **AFFIRMED**.

Judgment entered this 30th day of October, 2014.