

# In the
# Court of Appeals
# Second Appellate District of Texas
# at Fort Worth

_____

No. 02-24-00201-CR

_____

JUSTIN MICHAEL MILEM, Appellant

V.

THE STATE OF TEXAS

---

On Appeal from Criminal District Court No. 3
Tarrant County, Texas
Trial Court No. 1691690

---

Before Kerr, Birdwell, and Bassel, JJ.
Memorandum Opinion by Justice Kerr

## MEMORANDUM OPINION

In a single issue in this murder case, Justin Michael Milem asks us to decide whether the trial court erred in denying his motion for continuance. It did not, so we will affirm.

## Background

At the start of the first day of trial—a Monday—Milem moved for a continuance so that he could adequately prepare for trial. His written request arose from the State's disclosure the previous Friday[1] that firearms seized from Milem's home—which was not the crime scene—had been test-fired and the shell-casing results entered into NIBIN.[2]

---

[1] The State explained that a detective thought that the disclosed information had been successfully uploaded earlier to the online TechShare system for Milem's review but discovered that it had not gone through. Milem does not argue that the State failed to comply with Article 39.14 of the Texas Code of Criminal Procedure. *See* Tex. Code Crim. Proc. Ann. art. 39.14.

[2] The National Integrated Ballistic Information Network (NIBIN) is a database that compiles, for comparison, information to determine if a particular firearm has been used in other offenses. The Bureau of Alcohol, Tobacco, Firearms, and Explosives describes NIBIN as a program that "automates ballistics evaluations and provides actionable investigative leads in a timely manner," allowing law enforcement to "search [cartridge-casing evidence] against evidence from their jurisdiction, neighboring ones, and others across the country." *See* https://www.atf.gov/ firearms/national-integrated-ballistic-information-network-nibin (last viewed May 28, 2025); *see also Silva v. State*, No. 05-14-00428-CR, 2015 WL 6750802, at *1 (Tex. App.—Dallas Nov. 4, 2015, no pet.) (mem. op., not designated for publication) (describing NIBIN).

The State responded that the weapons had been fired only to confirm their operability, after which the State entered the shell-casing information into the NIBIN system. Because no connection with any other crime was revealed, and because no shell casings or bullets were found at the murder scene, the weapons "weren't tested against . . . anything from the [murder] scene." The State also informed the trial court that the bullet recovered from Michael Henley's—the victim's—body during an autopsy had never been ballistically tested.

The trial court asked Milem how any additional analysis or testing—the basis of his supplemental continuance motion[3]—could be exculpatory, noting that NIBIN deals with shell casings; none were discovered at the scene; and "if there's no shell casing found at the murder scene, . . . the NIBIN analysis couldn't be exculpatory for [Milem]." Milem asserted only that it seemed "very weird" that "there's analysis done to link [the fired weapons] to other crimes but then the ballistic report isn't done" on the bullet found in Henley's body. Milem's continuance motion averred that the lack of a ballistics test was illogical because "they would only be able to link a weapon to other crimes with a ballistic report." He requested the shell-casing testing results, "and if none are available, [to] utilize the existing fired cartridges to run a new report. The

___

[3]Six days before Milem filed his supplemental motion, he filed an initial continuance motion seeking a delay so that a professional could evaluate his possible mental-health issues and provide an expert opinion. That request was not discussed at the hearing, and Milem never sought or obtained a ruling on it.

evidence in question could show that weapons seized from [Milem's] house were not one of the weapons used in this offense."[4]

The trial court denied the motion. Milem was then arraigned and pleaded not guilty to having killed Henley intentionally or knowingly by "shooting him with a firearm," after which a jury was selected. But before the jury could be sworn, one juror revealed that she had shared online information about the case with several friends and, according to the trial court's summary of additional off-the-record discussions, had also talked about it with several panel members, at least two of whom were selected as jurors. The next morning, with the parties' agreement, the trial court dismissed that first jury and empaneled a new one.

Milem then changed his plea to guilty, and the trial court elicited Milem's understanding that he was pleading guilty without any recommendation from the District Attorney's office, as well as his agreement that he was pleading guilty because he was guilty and for no other reason, that his guilty plea was "free and voluntary,"

---

[4]On appeal, Milem asserts that his trial counsel, although "realiz[ing] that additional ballistics testing was needed," "did not articulate or appreciate exactly how the test-fired rounds could be used for comparison to the recovered bullet." Our review for abuse of discretion is necessarily limited to what the trial court had before it at the time it ruled rather than what might have been argued. *Cf.*, *e.g.*, *McBurnett v. State*, 629 S.W.3d 660, 663 (Tex. App.—Fort Worth 2021, pet. ref'd) (stating that reviewing courts apply abuse-of-discretion standard to motions for mistrial, "considering only the arguments before the court at the time of its ruling"); *Brito Carrasco v. State*, 154 S.W.3d 127, 129 (Tex. Crim. App. 2005) ("[A]n appellate court must review the trial court's ruling [on the admissibility of evidence] in light of what was before the trial court at the time the ruling was made.").

and that he understood the punishment range. The jury entered a verdict of guilt as instructed.

After hearing punishment evidence over two-plus days, the jury assessed Milem's punishment at 55 years' imprisonment, and the trial court sentenced him accordingly. Milem filed a new-trial motion that was overruled by operation of law, but he did not include the trial court's denial of his continuance motion as a basis for a new trial.[5] On appeal, Milem challenges only the denial of his continuance motion.

**Standard of Review; Applicable Law**

We review a trial court's decision to grant or deny a continuance for an abuse of discretion. *Gallo v. State*, 239 S.W.3d 757, 764 (Tex. Crim. App. 2007); *see* Tex. Code Crim. Proc. Ann. arts. 29.03 (criminal action may be continued upon sufficient cause shown), 29.06(6) (sufficiency of a continuance motion is addressed to the trial court's sound discretion and will not be granted as a matter of right). To establish reversible error based on the denial of a motion for continuance, a defendant must show both that the trial court erred in denying the motion and that the lack of a continuance harmed him. *Gonzales v. State*, 304 S.W.3d 838, 843 (Tex. Crim. App. 2010) (explaining

---

[5]As with many seemingly perfunctory new-trial motions, Milem simply asserted—without explanation—that the verdict and sentence were "contrary to the law and the evidence"; that the jury's sentence was "excessive and violates the cruel and unusual punishment clauses of the U.S. and Texas Constitutions"; and that the indictment "was fundamentally defective, did not allege an offense against the law, failed to provide notice as required by due process of law, and failed to vest the trial court with jurisdiction."

that "[i]n a motion for new trial, [the defendant] should allege facts tending to establish both prongs—error and harm").

The first prong "requires a showing that the case made for delay was so convincing that no reasonable trial judge could conclude that scheduling and other considerations as well as fairness to the State outweighed the defendant's interest in delay of the trial." *Id.* at 843 (quoting 42 George E. Dix & Robert O. Dawson, *Texas Practice Series: Criminal Practice and Procedure* § 28:56 (2d ed. 2001), at 532–33 (including the authors' further observation that "[a]ppellate courts have not addressed this, however, because convicted defendants have never [been] able to make the necessary specific showing of harm")). The second prong requires a defendant to show with specificity that the trial court's ruling resulted in actual prejudice to his defense. *Janecka v. State*, 937 S.W.2d 456, 468 (Tex. Crim. App. 1996); *Heiselbetz v. State*, 906 S.W.2d 500, 511–12 (Tex. Crim. App. 1995).

Because speculative harm is not enough, *see Renteria v. State*, 206 S.W.3d 689, 702 (Tex. Crim. App. 2006), a defendant who was denied more time to prepare must demonstrate "with considerable specificity how [he] was harmed by the absence of more preparation time than he actually had," a showing that should ideally occur at a hearing on a new-trial motion. *Gonzales*, 304 S.W.3d at 842–43 (quoting Dix & Dawson, *supra*, who explained that a showing of harm "can ordinarily be made only at a hearing on a motion for new trial, because almost always only at that time will the defendant be able to produce evidence as to what additional information, evidence[,]

6

or witnesses the defense would have had available if the motion for delay had been granted")); *see also Rodriguez v. State*, No. 02-23-00224-CR, 2024 WL 1451974, at *3 (Tex. App.—Fort Worth Apr. 4, 2024, no pet.) (mem. op., not designated for publication) (noting that specific harm can ordinarily be shown only at a hearing on a new-trial motion and that although appellant filed a motion for new trial, his sole argument was that "the verdict is contrary to the law and evidence"). A motion for new trial is not, however, necessary to preserve error concerning the denial of a continuance motion. *Harrison v. State*, 187 S.W.3d 429, 433 (Tex. Crim. App. 2005).

### Discussion

We conclude that Milem has not satisfied either prong of the abuse-of-discretion test.

As for the first, Milem has not shown (or even argued) that "the case made for delay was so convincing that no reasonable trial judge could conclude that scheduling and other considerations as well as fairness to the State outweighed the defendant's interest in delay of the trial"—the essence of showing trial-court error. *Gonzales*, 304 S.W.3d at 843. That aside, although his appellate briefing focuses entirely on putative harm, Milem has also not shown "with considerable specificity" how the denial of a continuance actually prejudiced his defense or caused him to plead guilty. *Id.* at 842–43.

Milem points to the State's undeniably belated uploading of evidence regarding the test-firing of three weapons seized from his home and the lack of a connection

7

between any of their shell casings and another offense, but he uses that circumstance to argue for a claimed need to forensically compare bullets fired from those weapons with the bullet recovered from Henley's body. Although the State was not obliged to—and did not—run any ballistics testing on the recovered bullet, Milem himself could have requested such testing at any time before trial if he believed that the results might rule out one of his guns as the murder weapon.[6] On appeal, he argues that there seemed to be "no rationale for the State to have failed to accomplish basic forensic ballistic testing before trial, unless it was suspected by the police that one of Milem's seized guns was not the murder weapon." But in light of the evidence admitted during the two-day punishment trial—including convenience-store surveillance videos showing his interactions with Henley shortly before the shooting—it seems equally plausible that the State saw no need to incur the expense of ballistics testing because it believed that it had enough evidence to secure a conviction. Regardless, without some argument laying out "with considerable specificity how [Milem] was harmed by the absence of more preparation time than he actually had," *id.* at 842, we are left only to speculate that additional testing might have

---

[6]His trial counsel was aware that guns had been seized from Milem's home and that a bullet had been found in Henley's body. After entering his guilty plea, Milem testified at punishment and answered, "I did," when asked whether he had used one of his guns to commit the murder, suggesting an understanding that ballistics testing would in fact not be exculpatory. He also testified that he had pleaded guilty to "move forward with this, try to do my best to take responsibility for my actions," and apologized directly to Henley's family.

affected the result of a trial on guilt or Milem's decision to short-circuit the proceedings by pleading guilty.

Concerning his guilty plea, Milem argues that we must "determine whether [his] decision to change his plea to guilty was influenced by the court's denial of his request for a continuance." According to Milem, "[k]nowing the results of further ballistic testing would have been a factor in his deciding of [sic] whether to maintain his presumption of innocence." But he acknowledges that "there is no way of knowing what role the knowledge of the results of the testing would have played in [his] decision to change his plea to guilty." This is yet another example of wholly speculative and theoretical harm. *Cf. Thomas v. State*, No. 02-14-00441-CR, 2016 WL 4538556, at *8 (Tex. App.—Fort Worth Aug. 31, 2016, no pet.) (mem. op., not designated for publication) (holding no abuse of discretion in denial of requested continuance for a psychological evaluation and noting appellant's admission in appellate briefing that the need for an evaluation "'is perhaps more speculative than the actual sexual assault evidence, since it is unknown what that examination might have revealed'"); *see also Jackson v. State*, No. 11-21-00263-CR, 2023 WL 3633641, at *2 (Tex. App.—Eastland May 25, 2023, no pet.) (mem. op., not designated for publication) (holding that appellant "clearly fail[ed]" to show harm where he "identified no specific harm before the trial court, in a motion for new trial, or to this court in his appellate brief" arising from denial of continuance to obtain psychiatric records that he "believe[d]" "were *likely* to be powerful mitigating evidence"); *Riddle v.*

9

*State*, No. 02-14-00180-CR, 2014 WL 5409550, at *6 (Tex. App.—Fort Worth Oct. 23, 2014, pet. ref'd) (mem. op., not designated for publication) (holding that appellant failed to meet "high standard" for showing harm by asserting that his prior probation supervisor, whose unavailability for trial was a basis for continuance motion, "may have conducted an . . . assessment and may have determined the IQ of [Appellant] prior to setting up the treatment program for him"; this assertion was "too speculative to establish the requisite quantum of harm"). Moreover, as the State notes, Milem had initially pleaded *not* guilty following the trial court's denying his continuance motion and before the jury swap occurred. Thus, per the State, "[i]f the trial court's denial of his supplemental motion for continuance was, as he argues, influential in his decision to plea, he would have pleaded guilty at an earl[ier] stage of the proceedings."[7]

After considering the record and Milem's arguments in light of the trial court's considerable discretion and Milem's obligation to show specific harm, we hold that he has not demonstrated an abuse of discretion, and we overrule his sole issue.

## Conclusion

Having overruled Milem's sole issue on appeal, we affirm the trial court's judgment.

---

[7]Milem does not argue that his guilty plea was rendered involuntary by the trial court's putting him to trial without a continuance.

/s/ Elizabeth Kerr
Elizabeth Kerr
Justice

Do Not Publish
Tex. R. App. P. 47.2(b)

Delivered:  May 29, 2025