

# In The
# Court of Appeals
# Sixth Appellate District of Texas at Texarkana

No. 06-19-00164-CR

BOBBY CARL LENNOX AKA BOBBY CARL LEANOX, Appellant

V.

THE STATE OF TEXAS, Appellee

On Appeal from the 6th District Court
Lamar County, Texas
Trial Court No. 28256

Before Morriss, C.J., Burgess and Stevens, JJ.
Opinion by Chief Justice Morriss

## OPINION

After a Lamar County jury found Bobby Carl Lennox[1] guilty of three counts of forgery of a financial instrument, the trial court sentenced him to seventeen years' imprisonment on each count, with the sentences to run concurrently. Lennox appeals, maintaining that his sentence was outside the applicable punishment range, that the evidence was insufficient to show that he had the ability to pay court-appointed attorney fees, and that the trial court erred when it failed to hold an evidentiary hearing on his motion for new trial.[2]

We conclude that (1) Lennox's sentences exceeded the applicable punishment range, (2) assessing court-appointed attorney fees was improper, and (3) denying Lennox's motion for new trial without a hearing was not error. Therefore, we modify each such judgment to correct recitation of the "Degree of Offense" and "Statute for Offense." As to Count One, we modify the trial court's judgment and the bill of costs by deleting $390.00 of court-appointed attorney fees, however characterized. We affirm those portions of all three judgments, as modified, finding Lennox guilty of the respective, modified, offenses. Because we find error in the punishment portion of the judgments, we reverse the portion of the judgments imposing punishment, and we remand the causes to the trial court for new punishment hearings.

After James Maurice McKnight passed away in 2018, his daughter, Fran King, closed McKnight's bank account at Guaranty Bank. Later, in December 2018, King asked Frank Norwood to have his auction company organize a sale of McKnight's estate. Among other

---

[1]Appellant was also known as Bobby Carl Leanox.

[2]Lennox does not challenge the sufficiency of the evidence as to any of the three charges against him.

individuals, Brandon Crawford, Destiny Brush, and Janae Lewis helped Norwood with the estate sale.[3] Before the sale, King's family placed some items, including a checkbook, in a "safe room" in McKnight's home so that the items would not be sold. The evidence demonstrated Lewis's awareness that those items had been placed in the "safe room." The estate sale was conducted December 29, 2018.

Crawford testified that he and Lennox were "pretty good friends" and that he had worked with Lennox "a couple of times." Crawford also testified that Lennox admitted to him that he received the checks from the estate sale from Lewis, "from the dead guy," and to having passed the checks.

In January 2019, Nima Sherpa (Nima) was the manager of the Quick Track convenience store in Paris, Texas. Nima testified that she knew Lennox because he regularly came into the store and that Lennox often brought checks to the store in order to cash them. According to Nima, in January 2019, Lennox "passed" checks in the store that had been dated January 7, January 9, and January 12, 2019. The three checks were from McKnight's bank account and had been made payable to Bobby Lennox. Nima said that, because Lennox was a regular customer, she did not ask him to endorse the checks or to pay the normal check-cashing fee. Nima later learned that the bank "rejected" the three checks for insufficient funds.

Gyalbu Sherpa (Gyalbu), also a manager at Quick Track, stated that he knew Lennox because Lennox sometimes did "small jobs" for Quick Track stores. Gyalbu explained that, after Lennox cashed the checks and Gyalbu realized there were insufficient funds in the account, Gyalbu

---

[3]Norwood knew Lennox "[j]ust in passing," but Lennox had not helped with the McKnight estate sale.

asked Lennox, "I said your checks are bad, why do you pass those checks?" Lennox responded that "[he] worked for somebody and those [were the employer's] checks." According to Gyalbu, Lennox claimed not to have known the checks were "bad."

McKnight's daughter, King, stated that, after she closed her father's account at Guaranty Bank, she received a telephone call from an employee of the bank informing her that one of her father's bank account checks had gone "through" the bank. King said she reported the incident to law enforcement. She stated that she did not write the check and had never written any check to Lennox. King also said that, as far as she was aware, her father had not known Lennox or hired him to do any work.

*(1)   Lennox's Sentences Exceeded the Applicable Punishment Range*

There is no question that the jury convicted Lennox of three counts of forgery of a financial instrument by passing three forged checks, each valued at $100.00 but less than $750.00. Lennox maintains that the three charges should have been categorized as Class B misdemeanors and that punishment enhancement was supported. Instead, the jury was instructed that the charges were state jail felonies. Accordingly, Lennox maintains that the three sentences of seventeen years' imprisonment exceeded the applicable punishment range. We agree with Lennox.

"Forge" is defined, in relevant part, to mean "to alter, make, complete, execute, or authenticate any writing so that it purports: (i) to be the act of another who did not authorize that act." TEX. PENAL CODE ANN. § 32.21(a)(1) (Supp.). In this case, Lennox was charged with cashing three financial instruments he had forged. Count One of the indictment alleged, in relevant part, that Lennox,

4

did then and there, with intent to defraud or harm another, pass to Nima Sherpa, a forged writing, knowing such writing to be forged, and such writing had been so made or completed that it purported to be the act of James McKnight, who did not authorize the act, and the writing was a check of the tenor following:



."

Count Two, using similar language, alleged that Lennox passed a forged check to Sherpa "of the

tenor following:



."

Count Three, also using similar language, alleged that Lennox passed a forged check to Sherpa "of the tenor following:


."

The State contends that it appropriately indicted Lennox on three counts of forgery pursuant to Section 32.21(d) of the Texas Penal Code. *See* TEX. PENAL CODE ANN. § 32.21(d) (Supp.). Section 32.21, subsection (d), states, "Subject to Subsection (e-1), an offense under this section is a state jail felony if the writing purports to be a . . . check[.]" *See id.*

Yet, Lennox points out that the three offenses, as charged and as proven, were Class B misdemeanors. In support of his position, he directs us to Section 32.21, subsection (e-1), of the Texas Penal Code, which states,

> If it is shown on the trial of an offense under this section that the actor engaged in the conduct to obtain or attempt to obtain a *property* or service, an offense under this section is . . . (2) a Class B misdemeanor if the value of the property or service is $100 or more but less than $750.

TEX. PENAL CODE ANN. § 32.21(e-1) (emphasis added). Further, subsection (2) of Section 32.01 makes clear that, within the statutory scheme, the definition of property includes money. TEX.

6

PENAL CODE ANN. § 32.01(2)(C). When Lennox forged the three checks, took them to the convenience store, and cashed them, the uncontroverted evidence suggests that he obtained property in the form of money. Subsection 32.21(d) expressly states that it is subject to Subsection 32.21(e-1); thus, if the latter subsection falls within the allegations charged and is not otherwise excluded, it controls at the expense of subsection (d). Because the allegations of the indictment spell out offenses under subsection (e-1),[4] the applicable offenses are those set out in subsection (e-1), not in subsection (d).[5] In other words, Lennox was convicted of three Class B misdemeanors, as charged in the indictment.

As to each of the three counts of forgery against Lennox, the State alleged two enhancement paragraphs in the indictment, alleging that, prior to the commission of the charged offenses, Lennox had been finally convicted of two felony offenses, specifically, aggravated assault in 2002 and burglary of a habitation with intent to commit theft in 2000. Lennox concedes that his sentences were subject to enhancement based on jury findings that those allegations were true.

---

[4]One might conclude that the indictment does not allege any cash or other property received by Lennox and that little or no evidence suggests that he received cash or property from the checks. But, the indictment clearly sets out the three checks that it alleges were passed by Lennox, including the images of the actual checks, showing that they were made payable to him. As alleged, we do not see any alternative other than that Lennox was charged with getting cash or other property or service from those three checks, triggering subsection (e-1). At the very least, the indictment certainly fails to exclude the applicability of subsection (e-1), the section to which subsection (d) is expressly made subject. Also, no evidence suggests that Lennox did not receive property or service in exchange for those checks; in fact, the uncontroverted evidence is that he "cashed" them and that he, later, paid one of them back. Also, on appeal, the State recites that he got cash for the checks.

[5]The indictment's caption recited that the offenses were state jail felonies under subsection (d). But indictment captions are not considered part of the charging instrument. *Stansbury v. State*, 82 S.W.2d 962, 964 (Tex. Crim. App. 1935); *Adams v. State*, 222 S.W.3d 37, 53 (Tex. App.—Austin 2005, pet. ref'd). We must go by the offense set out by the allegations contained in the body of the indictment, rather than by the conflicting caption. *See Adams*, 222 S.W.2d at 52–53; *Rager v. State*, No. 09-10-00259-CR, 2011 WL 2732242, at *1 (Tex. App.—Beaumont July 13, 2011, no pet.) (mem. op., not designated for publication).

The State contends that, because Lennox was convicted of three state-jail felonies, twice enhanced, the jury had the discretion to consider a second-degree felony punishment range.[6] Thus, according to the State, Lennox's seventeen-year sentences were appropriate.[7] We disagree. Lennox was not convicted of three state jail felonies, but was instead convicted of three Class B misdemeanors, each of which was enhanced by a prior felony conviction.

If, during prosecution of a Class B misdemeanor, it is shown that a defendant has previously been convicted of a Class A or Class B misdemeanor or a felony offense, the range of punishment for that defendant is confinement for not less than thirty, nor more than 180 days, a fine not to exceed $2,000.00, or both. TEX. PENAL CODE ANN. § 12.43(b)(2). Therefore, when Lennox was assessed seventeen-year prison sentences for what amounted to three enhanced Class B misdemeanor convictions, his sentences exceeded the applicable punishment range. "A sentence that is outside the maximum or minimum range of punishment is unauthorized by law and therefore illegal." *Mizell v. State*, 119 S.W.3d 804, 806 (Tex. Crim. App. 2003).

---

[6]Section 12.425(b) of the Texas Penal Code states,

> If it is shown on the trial of a state jail felony punishable under Section 12.35(a) that the defendant has previously been finally convicted of two felonies other than a state jail felony punishable under Section 12.35(a), and the second previous felony conviction is for an offense that occurred subsequent to the first previous conviction having become final, on conviction the defendant shall be punished for a felony of the second degree.

TEX. PENAL CODE ANN. § 12.425(b).

[7]Section 12.33 of the Texas Penal Code states, in part, "(a) An individual adjudged guilty of a felony of the second degree shall be punished by imprisonment in the Texas Department of Criminal Justice for any term of not more than 20 years or less than 2 years." TEX. PENAL CODE ANN. § 12.33(a).

We sustain this point of error.  Lennox's sentences, being outside the maximum range of punishment, are illegal, and he is entitled to a new punishment trial as a result.  *See Rent v. State*, 982 S.W.2d 382, 385 (Tex. Crim. App. 1998).

*(2)     Assessing Court-Appointed Attorney Fees Was Improper*

Lennox also contends that the trial court's assessment of court-appointed attorney fees is not supported by sufficient evidence.  Under Article 26.05(g) of the Texas Code of Criminal Procedure, a trial court has the authority to order the reimbursement of court-appointed attorney fees only if the court determines that a defendant has financial resources that enable him to offset in part or in whole the costs of the legal services provided, including any expenses and costs."  TEX. CODE CRIM. PROC. ANN. art. 26.05(g) (Supp.).  "[T]he defendant's financial resources and ability to pay are explicit critical elements in the trial court's determination of the propriety of ordering reimbursement of costs and fees" of legal services provided.  *Armstrong v. State*, 340 S.W.3d 759, 765–66 (Tex. Crim. App. 2011) (alteration in original) (quoting *Mayer v. State*, 309 S.W.3d 552, 556 (Tex. Crim. App. 2010)).

As to Count One only, the trial court assessed costs of court in the amount of $744.00, which included $390.00 in court-appointed attorney fees.[8]  Lennox contends that the appellate record does not contain sufficient evidence of his ability to pay the attorney fees as ordered in the count-one judgment. We agree.[9]  *See Cates v. State*, 402 S.W.3d 250, 252 (Tex. Crim. App. 2013);

---

[8]In his brief, Lennox incorrectly states that the assessed attorney fees amounted to $744.00; however, the clerk's bill of costs reflects attorney fees in the amount of $390.00.  The judgments against Lennox in counts two and three do not reflect the assessment of either court costs or court-appointed attorney fees.

[9]To its credit, the State concedes error in the assessment of court-appointed attorney fees against Lennox.

9

*see also Mayer v. State*, 309 S.W.3d 552 (Tex. Crim. App. 2010); *Martin v. State*, 405 S.W.3d 944, 946–47 (Tex. App.—Texarkana 2013, no pet.).

Lennox filed an application for court-appointed counsel, which the trial court granted. After trial, Lennox completed a pauper's oath, and the trial court appointed him appellate counsel. "[A] 'defendant who is determined by the court to be indigent is presumed to remain indigent for the remainder of the proceedings in the case unless a material change in the defendant's financial circumstances occurs.'" *Cates*, 402 S.W.3d at 251 (quoting TEX. CODE CRIM. PROC. ANN. art. 26.04(p) (Supp.). There is nothing in the record to show that Lennox's financial circumstances had changed. Consequently, the assessment of $390.00 in court-appointed attorney fees was erroneous. *Id.*; *Martin v. State*, 405 S.W.3d 944, 946–47 (Tex. App.—Texarkana 2013, no pet.).

Appellate courts "have the authority to reform judgments and affirm as modified in cases where there is non[-]reversible error." *Ferguson v. State*, 435 S.W.3d 291, 294 (Tex. App.—Waco 2014, pet. struck) (comprehensively discussing appellate cases that have modified judgments).

Accordingly, we modify the Count-One judgment and the bill of costs as to Count One only by deleting the assessment of attorney fees in the amount of $390.00, however characterized.

*(3)*     *Denying Lennox's Motion for New Trial Without a Hearing Was Not Error*

Lennox also contends that the trial court erred when it denied his request for a hearing on his motion for new trial. Specifically, he contends he was entitled to a hearing to develop his claim that he knew one of the jurors and that such individual was hostile toward him. We disagree.

"The purposes of a new trial hearing are (1) to determine whether the case should be retried or (2) complete the record for presenting issues on appeal." *Hobbs v. State*, 298 S.W.3d 193, 199

10

(Tex. Crim. App. 2009). Such a hearing is not an absolute right. *Id.* A hearing on a motion for new trial is mandatory only when (1) it is requested, (2) matters raised in the motion and accompanying affidavit are not determinable from the record, and (3) the motion and affidavit establish reasonable grounds showing that the defendant could potentially be entitled to relief. *Id.* (citing *Smith v. State*, 286 S.W.3d 333, 339 (Tex. Crim. App. 2009);[10] *Edwards v. State*, 37 S.W.3d 511 (Tex. App.—Texarkana 2001, pet. ref'd)). Even if the defendant meets the requirements for obtaining a hearing, however, the trial court is not required to allow live testimony at the hearing. *Holden v. State*, 201 S.W.3d 761, 764 (Tex. Crim. App. 2006). Instead, that decision lies within the discretion of the trial court. *Id.* (trial court did not abuse discretion by ruling based only on affidavits).

We review the denial of a hearing on a motion for new trial for an abuse of discretion and reverse only if the decision was so clearly wrong as to lie outside the zone within which reasonable persons might disagree. *See Gonzales v. State*, 304 S.W.3d 838, 842 (Tex. Crim. App. 2010). Absent such an abuse of discretion, an appellate court is not justified in reversing the trial court's judgment. *Id.*

> Appellate review of the denial of a motion for new trial hearing
>
> is limited to the trial judge's determination of whether the defendant has raised grounds that are both undeterminable from the record and reasonable, meaning they could entitle the defendant to relief. This is because the trial judge's discretion extends only to deciding whether these two requirements are satisfied. If the trial judge finds that the defendant has met the criteria, he has no discretion to withhold

---

[10]The affidavit need not make a prima facie case or establish every legal element required for relief. *Smith*, 286 S.W.3d at 339. "But affidavits that are conclusory in nature and unsupported by facts do not provide the requisite notice of the basis for the relief claimed; thus, no hearing is required." *Id.*

11

a hearing. In fact, under such circumstances the trial judge abuses his discretion in failing to hold a hearing.

*Smith*, 286 S.W.3d at 340.

In his amended motion for new trial, Lennox contends that one of the jurors "was hostile toward him[,] failed to answer and identify himself when both the State and David Turner, counsel for Defendant, asked if there was anyone who knew the Defendant." Lennox attached his affidavit to his motion, which stated, in part,

> I was present for jury selection the previous day and during jury selection, both the attorney for the State and my attorney, David Turner, asked the panel if there was anyone on the panel who knew me. No one raised their hand; however, there was an individual on the panel who knew me and had an ax to grind with me. I am uncertain of his name because of the context in which we met.

Lennox continued, "My job includes the installation and repair of walk-in coolers for commercial establishments. Approximately a month before trial, I was called to the QuickTrack . . . to address a problem with the walk-in cooler." Lennox said, "The owner gave me the job and the other repair company man became visibly upset and packed up his equipment and left." According to Lennox, one of the jurors was the man he had angered. Lennox goes on to state, "There was no doubt that he recognized me and there was no doubt that as the trial went on that he was hostile towards me." Lennox said that, after he was convicted and the punishment phase was completed and while the trial court was announcing his punishment in court, "[he] looked over at the gentlemen [from whom he] had taken the job away and he raised his thumb, put it to his left ear[,] and dragged it

12

across his throat while he looked at [Lennox]." Lennox said, "It was very clear that he had set about to seek revenge for my taking this job away from him and he clearly succeeded."[11]

In response to Lennox's motion, the State provided the trial court with sworn affidavits from all of the jurors. The jurors' affidavits were substantially similar and stated that they did not know Lennox before trial, that they had not heard any other juror mention knowing him, and that none of them made a gesture toward him nor did they see any other juror make a gesture to him when the trial court announced Lennox's sentences. In addition, the male jurors' affidavits contained a statement regarding their places of employment, along with a statement that they had never "done any cooler repair work for QuickTrack on Bonham Street in Paris, Texas."

The State also provided the trial court with an affidavit from Lhakpa Sherpa, which stated,

> I do not know Bobby Lennox personally, but he did some work on the compressor of our cooler in June 2019.
> Before Bobby Lennox did the work, another man looked at the cooler. I do not know his name or have his phone number. This man was a customer of the store. He was in the store when the cooler wasn't working and said he could look at it. He said he had to get a compressor from Dallas. He did not fix the cooler. We paid him to look at the problem with the cooler.
> Bobby Lennox came to look at the cooler after that. He came in at night. He did not meet the other man and was not in the store at the same time as the other man. Bobby Lennox did the work to fix the cooler and we paid him.

In its order denying Lennox's motion, the trial court stated,

> The veracity of the Defendant's allegations is determinable from the record, to wit: the 13 Affidavits attached to the State's Response. Because the factual allegations of the Defendant are untrue, the Defendant is not entitled to relief. To hold a live evidentiary hearing would be nothing more than a "fishing expedition."
> Furthermore, in support of the Court's decision to dispose of this motion without a hearing, the Court is cognizant of the limitations placed on jurors'

---

[11]Lennox identified the juror as the individual sitting "on [the] back row, second or third from the right when the jury came back after punishment."

testimony by TRE 606(b).[12]  The Affidavits addressed the only possible issues on which the jurors could be questioned because neither party would be able to elicit testimony about what went on during deliberations.

We agree with the trial court.  Applying the applicable standard of review, we conclude that the trial court could have reasonably concluded that Lennox's complaint could be resolved from the record alone.  Likewise, the trial court could have concluded that Lennox's motion and affidavit did not provide grounds for the requested relief.  We therefore find that the determination to deny Lennox's motion for new trial without a hearing was not an abuse of discretion.

We overrule this point of error.

Because we have concluded that each of the three judgments incorrectly identifies the statute and the degree of the offense regarding the respective charges of which Lennox was found guilty, we modify each such judgment (1) by deleting the phrase "STATE JAIL FELONY PUNISHED AS A SECOND DEGREE FELONY" under the heading "Degree of Offense" and replacing it with the phrase "CLASS B MISDEMEANOR, ENHANCED" and (2) by deleting the statutory section numbers "32.21(d) and 12.425" under the heading "Statute for Offense" and replacing them with Section 32.21(e-1) and Section 12.43(b)(2) of the Texas Penal Code.  As to Count One, we modify the trial court's judgment and the bill of costs by deleting $390.00 of court-

---

[12]Rule 606(b)(1) of the Texas Rules of Evidence states,

> During the inquiry into the validity of a verdict or indictment, the juror may not testify about any statement made or incident that occurred during the jury's deliberations; the effect of anything on that juror's or another juror's vote; or any juror's mental processes concerning the verdict or indictment.  The court may not receive a juror's affidavit or evidence of a juror's statement on these matters.

TEX. R. EVID. 606(b)(1).

appointed attorney fees, however characterized.  We affirm those portions of all three judgments, as modified, finding Lennox guilty of the respective offenses.  Because we find error in the punishment portion of the judgments, we reverse the portion of the judgments imposing punishment, and we remand the causes to the trial court for new punishment hearings.  *See* TEX. CODE CRIM. PROC. ANN art. 44.29(b).

Josh R. Morriss, III
Chief Justice

Date Submitted:     February 4, 2020
Date Decided:       February 20, 2020

Publish