**Opinion filed March 2, 2023**



In The

# Eleventh Court of Appeals

_____

## No. 11-21-00062-CR

_____

## JEFFREY WINSTON FORREST, Appellant

## V.

## THE STATE OF TEXAS, Appellee

**On Appeal from the 350th District Court**
**Taylor County, Texas**
**Trial Court Cause No. 11750-D**

## M E M O R A N D U M   O P I N I O N

Jeffrey Winston Forrest, Appellant, appeals his convictions for two counts of aggravated sexual assault of a child. TEX. PENAL CODE § 22.021(a)(1)(B)(i), (iii), (a)(2)(B) (West 2019). The jury found Appellant guilty and assessed his punishment at imprisonment for ninety-nine years in the Correctional Institutions Division of the Texas Department of Criminal Justice and a fine of $10,000 for each count. The trial court sentenced Appellant accordingly and per prior agreement of the parties

ordered the sentences to run concurrently. Appellant raises three issues on appeal: first, that his Fifth Amendment rights were violated when the trial court admitted reports from the counseling assessment Appellant completed prior to his divorce proceeding; second, that the trial court erred in admitting evidence of extraneous offenses during the guilt/innocence phase of trial; and third, that the trial court abused its discretion in denying Appellant's motion for continuance before trial. We affirm.

*Factual and Procedural History*

Appellant was indicted in 2015 for two counts of aggravated sexual assault of J.B.S., who, at the time of the alleged offenses, was a child under the age of fourteen. These offenses were alleged to have occurred on or about September 1, 1993, in Abilene, Texas. Appellant did not appear for jury trial on August 29, 2016. Appellant's bond was declared insufficient and forfeited, and the judge ordered a warrant for Appellant's arrest. After being placed on the U.S. Marshal's "15 Most Wanted List," Appellant was apprehended in May of 2020 in Mexico and was extradited to the United States.

In preparation for the 2016 trial date, the State provided notice of intent to introduce evidence from three witnesses, C.K., M.S., and M.H., regarding offenses similar to those charged in the indictment. On March 23, 2021, before Appellant's second trial date of April 12, 2021, the State filed another notice of intent to introduce evidence of extraneous acts and prior convictions. This document specified one witness, M.C., who would testify that Appellant also sexually abused him as a child. Appellant's counsel filed a motion for continuance in response to the March 23, 2021 notice of extraneous offenses. In the motion, Appellant claimed that the additional alleged victim was a surprise and that trial counsel needed

additional time to investigate the allegation and prepare for testimony. In a hearing on April 8, 2021, the trial court denied Appellant's motion for continuance.

At the April 2021 jury trial, the State presented seventeen witnesses during the guilt/innocence phase, including the three additional alleged victims from the State's original notice of intent to introduce evidence of extraneous acts and prior convictions. J.B.S. and several members of his family also testified. M.H. was the only alleged victim who was not under the age of ten at the time of the offenses. Each of the other victims testified that Appellant sexually assaulted them when they were younger than ten years old, and all of the victims had met Appellant through church activities and daycare programs. The three victims of extraneous offenses who testified at the guilt/innocence phase of trial also indicated that Appellant became a trusted mentor or friend who would talk to them about things they liked and bring them presents.

J.B.S.'s father and stepbrother both testified that Appellant had admitted to them that he sexually abused J.B.S. when J.B.S. was a child. A friend and former coworker of Appellant testified that Appellant admitted to an inappropriate relationship with J.B.S. Appellant's ex-wife, Jennifer, also testified that Appellant admitted that he had sexually abused J.B.S., M.S., and M.H.

In April 2014, during Appellant's divorce and child custody proceeding with Jennifer, he agreed to complete a risk assessment with a therapist evaluator. The therapist evaluator, Denise Baker, completed a specific risk assessment as to Appellant and his future contact with his children. Baker testified that during the assessment, Appellant admitted to a previous sexual offense committed against a male child in Abilene. Baker testified that "grooming" in sex offenses often starts with choosing someone vulnerable, shy, or easily accessible, and then finding ways

3

to access the person, give them special treatment, and build trust with the child and their parents or guardians.

Following the close of testimony during the guilt/innocence phase of trial, the jury returned a unanimous verdict of guilty for both counts in the indictment. The State then called two witnesses in the punishment phase: Baker and M.C. The defense presented one rebuttal expert witness, Stephen Finstein. The jury assessed punishment at a term of ninety-nine years and a fine of $10,000 for each count. The trial court accepted the verdict for each count, ordering the sentences to run concurrently.

*Issue One—Appellant's Fifth Amendment Rights*

In his first issue, Appellant argues (1) that the admissions he made against his interest while meeting with a therapist evaluator in 2014—during child custody and divorce proceedings—were made during what "amounted to a custodial interrogation" and (2) that the admission of these statements into evidence during his criminal trial amounted to a violation of his Fifth Amendment rights under the United States Constitution.

Baker is a "self-employed . . . therapist evaluator in Texas." She was a licensed clinical social worker (LCSW) and a licensed sex offender treatment provider and supervisor (LSOTP). Baker was contacted by Appellant's then wife to conduct an assessment of Appellant in their pending divorce for the purpose of the couple's custody dispute. An assessment was agreed upon between the couple's lawyers. In this regard, Baker mentioned that the risk assessment that she performed on Appellant was required of him by the divorce court. After Appellant was informed that the results of the testing might not be confidential, he signed a consent form. Baker thereafter conducted a risk assessment of Appellant with respect to his suitability for unsupervised contact with his children. Baker's trial testimony

4

included Appellant's disclosure of sexual behavior with a child, made during the 2014 risk assessment she administered.

### 1. Applicable Law

"The Fifth Amendment provides that no person 'shall be *compelled* in any criminal case to be a witness against himself.'" *Wilkerson v. State*, 173 S.W.3d 521, 526 (Tex. Crim. App. 2005) (emphasis added) (quoting U.S. CONST. amend. V).[1] In *Miranda v. Arizona*, the Supreme Court held that the State may not use any statements stemming from "custodial interrogation of the defendant unless it demonstrates the use of procedural safeguards effective to secure the privilege against self-incrimination." *Miranda v. Arizona*, 384 U.S. 436, 444 (1966). The Court specifically defined "custodial interrogation" as "questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way." *Id.*; *see Elizondo v. State*, 382 S.W.3d 389, 394 (Tex. Crim. App. 2012) (noting that *Miranda*'s definition of custodial interrogation applies for Fifth Amendment purposes). The Supreme Court recognized that there is a unique danger of coercion in the police–arrestee relationship. *Miranda*, 384 U.S. at 467 ("without proper safeguards the process of in-custody interrogation of persons suspected or accused of crime contains inherently compelling pressures which work to undermine the individual's will to resist and to compel him to speak where he would not otherwise do so freely"). "Thus, the *Miranda* rule is intended to guard against coercive custodial questioning by police; it protects a suspect from the possibility of physical or psychological 'third degree' procedures." *Wilkerson*, 173 S.W.3d at 527 (internal quotes omitted).

---

[1]The Texas Constitution and the Texas Code of Criminal Procedure provide essentially equal protections to that of the Fifth Amendment: an accused in criminal prosecutions "shall not be compelled to give evidence against himself." *See* TEX. CONST. art. 1, § 10; TEX. CODE CRIM. PROC. ANN. art. 1.05 (West 2005). We focus our analysis on the Fifth Amendment protections as raised on appeal by Appellant.

*Miranda* generally applies only to questioning by law enforcement officers or their agents. *Id.* "There are two types of 'state agents': all those who are employed by any state agency are, by definition, 'state agents,' but only those who are working for or on behalf of police are law-enforcement 'state agents.'" *Id.* at 527–28. Although state employment clearly makes a person an "agent of the State," that label does not, by itself, make the person an "agent of the State" for the purpose of defining "custodial interrogation." *Paez v. State*, 681 S.W.2d 34, 37 (Tex. Crim. App. 1984). Not all government workers must be prepared to administer *Miranda* warnings and even less so when the official has not been given police powers. *Wilkerson*, 173 S.W.3d at 528. In fact, *Miranda* has been held inapplicable to questioning by school officials, welfare investigators, medical personnel, prison counselors, and parole or probation officers who have not been given any police powers. *Id.* This may be due in large part to the difference in jobs and responsibilities between law enforcement officers and those in welfare services. In *Wilkerson*, the Court of Criminal Appeals set out the differences in responsibilities between law enforcement and child protective services (CPS) caseworkers. *Lopez v. State*, 582 S.W.3d 377, 385 (Tex. App.—San Antonio 2018, pet. ref'd) (citing *Wilkerson*, 173 S.W.3d at 528). Law enforcement officers are tasked with ferreting out crime, investigating its commission, arresting perpetrators, and gathering evidence for possible prosecution, while CPS caseworkers are responsible for protecting the welfare and safety of children in the community. *Id.* (citing *Wilkerson*, 173 S.W.3d at 528; *State v. Aguilar*, 535 S.W.3d 600, 605 (Tex. App.—San Antonio 2017, no pet.)).

Although the job duties of law enforcement officers and CPS investigators could converge, there are three specific areas of inquiry that courts should consider, pursuant to *Wilkerson,* in order to determine if CPS investigators—or others in

similar roles—may be working in "cahoots" or as a conduit for a law enforcement officer. *Id.* First, what is the relationship between the law enforcement officer and CPS worker—was the CPS worker being used to accomplish what law enforcement could not? *Id.* at 385–86. Considerations include whether the law enforcement officer knew about the interview, arranged the interview, or was present for the interview with CPS. *Id.* at 386. Second, what were the CPS investigator's perceptions or actions? *Id.* Whether the CPS worker believed he was gathering evidence for a criminal prosecutor, or whether he was pursuing a separate goal or performing another duty, matters in determining if the CPS worker was acting in concert with law enforcement. *Id.* Third, what were the defendant's perceptions of the encounter, and did the defendant believe that the CPS investigator was an agent of law enforcement? *Id.*

### 2. *Analysis—No Fifth Amendment Violations in Admitting Statements Made to Therapist Evaluator*

During the trial, Appellant's counsel objected to testimony from the therapist evaluator, Baker, based on a violation of the Fifth Amendment, the Texas Constitution, and the Texas Code of Criminal Procedure. The trial court determined that the Fifth Amendment protections—and those offered by the Texas Constitution and the Texas Code of Criminal Procedure—were all conditioned on the violation occurring during a custodial interrogation in a criminal proceeding. The trial court ruled that the conversation during the specific risk assessment with Baker was not a custodial interrogation in the manner contemplated by the Fifth Amendment, the Texas Constitution, or the Texas Code of Criminal Procedure. Based on these reasons, the trial court overruled Appellant's objection to Baker's testimony as it related to any admissions made by Appellant to her. We agree with the trial court.

Baker testified that the primary goal in doing risk assessments is to determine the "level of risk that [an] individual might pose to the community in general." This

7

goal is similar to that of CPS caseworkers as laid out by the *Wilkerson* court. *See Lopez*, 582 S.W.3d at 385. Further, there is no evidence under any of the three *Wilkerson* inquiries to support that Baker was acting as an extension of law enforcement. First, there was no evidence presented to indicate that there was a relationship between Baker's interview with Appellant in Denton, Texas, and law enforcement in Abilene, Texas, where J.B.S. reported his abuse occurred. Second, Baker testified that she completed a specific risk assessment with Appellant as a part of his family court case, but she did not indicate that this was in conjunction with any criminal investigation or proceeding. And third, it is clear that Appellant did not believe that Baker was working with law enforcement. Appellant's trial attorney informed the trial court that Appellant believed that his conversation with Baker was for the purpose of the family court proceeding only. There is nothing in the record to refute the trial court's conclusion that the conversation between Appellant and Baker was not a custodial interrogation and, thus, did not require her to administer *Miranda* warnings to Appellant. Simply put, there is no indication that Baker was working "in cahoots" with law enforcement. *See Elizondo*, 382 S.W.3d at 396 (applying the three *Wilkerson* factors to an interrogation performed by a retail store's loss-prevention agent).

Finally, the Fifth Amendment protects criminal defendants against *compelled* self-incrimination. *See* U.S. CONST. amend. V. Should a criminal defendant decide to speak about his crimes to others who are not law enforcement, he may not later prevent those persons from testifying against him during his criminal proceeding. In fact, Appellant admitted to sexually abusing J.B.S. to at least four other witnesses: J.B.S.'s father, J.B.S.'s stepbrother, Appellant's ex-wife Jennifer, and a former coworker (Greg Rake). Baker's testimony that Appellant admitted to abusing "the child" was just one more admission by Appellant and was not in any way compelled

8

for criminal prosecution, nor was it a protected statement. The trial court did not err in overruling Appellant's objection. We overrule Appellant's first issue.[2]

*Issue Two—Admission of Extraneous Offenses*

In Appellant's second issue, he argues that the trial court erred in admitting testimony of the extraneous offenses committed by Appellant against C.K., M.S., and M.H. because they were offered to show character conformity during the guilt/innocence phase of trial. Appellant argues that the admission of this evidence violated Rule 403 of the Texas Rules of Evidence, as the probative value of the testimony was substantially outweighed by unfair prejudice.

*1. Standard of Review and Applicable Law*

We review a trial court's decision to admit or exclude extraneous offense evidence for an abuse of discretion. *Martinez v. State*, 327 S.W.3d 727, 736 (Tex. Crim. App. 2010). There is no abuse of discretion if the trial court's ruling is within the zone of reasonable disagreement. *De La Paz v. State*, 279 S.W.3d 336, 343–44 (Tex. Crim. App. 2009); *Barron v. State*, 630 S.W.3d 392, 410 (Tex. App.—Eastland 2021, pet. ref'd). A decision to admit extraneous misconduct evidence is within that zone if the evidence is relevant to a material, non-propensity issue and if its probative value is not substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading of the jury. *De La Paz*, 279 S.W.3d at 344.

"Evidence of a crime, wrong, or other act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character." TEX. R. EVID. 404(b)(1). Further, even relevant

---

[2]Appellant briefly argues on appeal that Article 38.22, section 6, of the Texas Code of Criminal Procedure (voluntariness) is applicable here. However, this issue was not raised before the trial court. Appellant contends in his brief that his statements to Baker were "elicited admissions" rather than voluntary statements. The trial court, although the issue of voluntariness was not raised, did find that Appellant had "complete knowledge of what he was doing" when he agreed to participate in the assessment with Baker.

evidence may be inadmissible if its probative value is "substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, or needlessly presenting cumulative evidence." TEX. R. EVID. 403. "'*Probative value*' means more than simply relevance."[3] *Valadez v. State*, No. PD-0574-19, 2022 WL 946268, at *4 (Tex. Crim. App. Mar. 30, 2022) (emphasis added) (quoting *Gigliobianco v. State*, 210 S.W.3d 637, 641 (Tex. Crim. App. 2006)). It refers to the inherent force of the evidence. *Id.* That force is determined by how strongly it serves to make more or less probable the existence of a fact of consequence to the litigation and also depends on the proponent's need for the evidence. *Id.*

Evidence of a crime, wrong, or other act may be admissible for a purpose other than character conformity, such as proof of "motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." TEX. R. EVID. 404(b)(2). Evidence of extraneous acts may also be admitted to rebut a defensive issue that negates an element of the charged offense. *De La Paz*, 279 S.W.3d at 343. "Whether extraneous offense evidence has relevance apart from character conformity, as required by Rule 404(b), is a question for the trial court." *Martin v. State*, 173 S.W.3d 463, 466 (Tex. Crim. App. 2005) (quoting *Moses v. State*, 105 S.W.3d 622, 627 (Tex. Crim. App. 2003)).

To be admissible under both Rule 404(b) and Rule 403 of the Texas Rules of Evidence, the extraneous evidence must satisfy a two-prong test: (1) the extraneous offense must be relevant to a fact of consequence apart from its tendency to prove conduct in conformity with character, and (2) the probative value of the evidence must not be substantially outweighed by unfair prejudice. *Id.* at 467. "Unfair

---

[3]Evidence is relevant if "it has any tendency to make a fact more or less probable than it would be without the evidence" and if "the fact is of consequence in determining the action." TEX. R. EVID. 401.

10

prejudice" is "a tendency to suggest decision on an improper basis." *Valadez*, 2022 WL 946268, at \*4 (quoting *Gigliobianco*, 210 S.W.3d at 641). There is a presumption that relevant evidence is more probative than prejudicial. *Hernandez v. State*, 390 S.W.3d 310, 323 (Tex. Crim. App. 2012).

A trial court, when undertaking a Rule 403 analysis, must balance (1) the inherent probative force of the proffered item of evidence along with (2) the proponent's need for that evidence against (3) any tendency of the evidence to suggest decision on an improper basis, (4) any tendency of the evidence to confuse or distract the jury from the main issues, (5) any tendency of the evidence to be given undue weight by a jury that has not been equipped to evaluate the probative force of the evidence, and (6) the likelihood that presentation of the evidence will consume an inordinate amount of time or merely repeat evidence already admitted. *Gigliobianco*, 210 S.W.3d at 641–42. These factors blend together in practice. *Id.* at 642.

*2. Analysis—The Record Reflects Abundant Purpose Other Than Character Conformity for Admission of the Extraneous Offenses.*

During trial, there was a discussion regarding the admissibility of extraneous offense evidence on Rule 403 grounds. The State proffered a summary of testimony that would be elicited through the complained-of witnesses. Counsel for the State indicated that C.K. would testify about specific grooming techniques and the manner of abuse suffered—by touching—and that those were similar to the techniques and manner of abuse testified to by J.B.S. but denied by Appellant. Additionally, the testimony from M.S. was expected to show that the grooming behavior he experienced from Appellant was similar to that experienced by J.B.S. and C.K. Further, counsel for the State expected the testimony from M.S. to show that he had a difficult homelife and that Appellant took him under his wing. And although J.B.S. did not testify to a difficult homelife, Appellant took on a mentor role with him

11

similar to that of Appellant with the other three.  Finally, the State proffered that because there were discrepancies in previous testimony, these witnesses would be important to the State's case.

Prior to ruling on Appellant's Rule 403 objection, the trial court announced on the record that the evidence related to the alleged extraneous offenses against C.K., M.S., and M.H. had probative value with respect to the commission of the offenses in the indictment and was admissible under Rule 404(b)(2).[4]  The trial court found that Appellant had a plan to create opportunities for the crimes alleged to have been committed against J.B.S.  The trial court additionally stated that the evidence also weighed heavily as to Appellant's intent and the absence of mistake.  The trial court held that the extraneous offense evidence was probative to Appellant's state of mind—and therefore relevant—and that it was not being introduced for character purposes.  With respect to the first prong, the Rule 404(b) prong, the trial court did not abuse its discretion when it determined that the evidence was relevant to a fact of consequence apart from a tendency to prove conformity of conduct.

As for the Rule 403 objection, the trial court found that the offenses alleged by C.K., M.S., and M.H. were similar in manner and nature to the offenses alleged against J.B.S.  The trial court also found that the evidence was not cumulative and that it could be useful in correcting potentially false impressions or inaccuracies

---

[4]Among Appellant's issues, he did not include a complaint under Article 38.37 of the Texas Code of Criminal Procedure.  Although the State and the trial court relied on Rule 404(b)(2), we note that the trial court also indicated that the extraneous offense evidence was such that it would be admissible, regardless of Rule 404, under Article 38.37.  Article 38.37 provides in part:

> Notwithstanding Rules 404 and 405, Texas Rules of Evidence, and subject to Section 2-a, evidence that the defendant has committed a separate offense described by Subsection (a)(1) or (2) may be admitted in the trial of an alleged offense described by Subsection (a)(1) or (2) for any bearing the evidence has on relevant matters, *including the character of the defendant and acts performed in conformity with the character of the defendant*.

TEX. CODE CRIM. PROC. ANN. art. 38.37, § 2(b) (West Supp. 2022) (emphasis added).

raised during cross-examination of the State's witnesses. The trial court ruled that the witnesses would be permitted to testify. At this time, the trial court offered a limiting instruction, and it gave limiting instructions to the jury prior to the testimony of C.K., M.S., and M.H. The trial court also included a limiting instruction in the charge as to each of the three extraneous offense witnesses.

The trial court's rulings under Rule 404 and Rule 403 were not outside the zone of reasonable disagreement. The trial court's analysis according to the *Gigliobianco* factors was part of the trial record. Under *Gigliobianco*, the trial court had to consider the inherent probative force of the evidence along with the State's need for that evidence. *See Gigliobianco*, 210 S.W.3d at 641–42. The trial court concluded that the evidence was probative in that each of the three witnesses could provide information regarding Appellant's intent, absence of mistake, and plan as it related to J.B.S.'s abuse. Further, the trial court determined that because of the cross-examination questions posed by the defense counsel, there was more than merely "cumulative" information being offered by each witness. This weighed against the tendency to suggest an improper basis or a tendency to confuse the jury. In fact, the trial court held that although there might be prejudice, there was not a danger of unfair prejudice as required by the statute. Further there is nothing in the record to indicate that the jury would give the testimony unfair weight. Instead, because several of the witnesses previously claimed they were not abused by Appellant, their testimony of alleged abuse provided defense the opportunity to cross-examine the witnesses regarding these inconsistencies. Finally, there was no allegation that any of the witnesses would consume an inordinate amount of time. In fact, there was cumulatively only approximately 62 pages of transcribed testimony for all three alleged victims in a week-long trial. Finding none of the six factors to weigh in favor of Appellant, the trial court overruled the Rule 403 objection.

Based on the factors laid out in *Gigliobianco*, the trial court properly evaluated the extraneous offense evidence, and we hold that its conclusion was not outside the zone of reasonable disagreement. We overrule Appellant's second issue.

*Issue Three—Appellant's Motion for Continuance*

In Appellant's third issue, he alleges that the trial court erred in denying Appellant's request for a continuance prior to trial. Appellant argues that when the State amended its notice of extraneous offenses and its witness list twenty days before trial, the defense trial strategy was altered. Because of such a surprise, Appellant argues that he should have been given additional time to investigate the new allegations and prepare for the testimony. The trial court denied the request.

1. *Standard of Review and Applicable Law*

We review a trial court's denial of a motion for continuance under an abuse of discretion standard. *Gallo v. State*, 239 S.W.3d 757, 764 (Tex. Crim. App. 2007); *see* TEX. CODE CRIM. PROC. ANN. art. 29.03 (West 2006) (criminal action may be continued upon sufficient cause shown); *id.* art. 29.06(6) (sufficiency of a motion for continuance is addressed to the sound discretion of the trial court and shall not be granted as a matter of right). To establish that the trial court committed reversible error when it denied Appellant's pretrial motion for continuance, Appellant must show (1) that the trial court erred when it denied his motion and (2) that he was harmed by the denial of a continuance. *Gonzales v. State*, 304 S.W.3d 838, 843 (Tex. Crim. App. 2010).

The first prong "requires a showing that the case made for delay was so convincing that no reasonable trial judge could conclude that scheduling and other considerations as well as fairness to the State outweighed the defendant's interest in delay of the trial." *Id.* The second prong requires a defendant to demonstrate that actual prejudice to his defense resulted from the trial court's ruling. *Janecka v. State*,

937 S.W.2d 456, 468 (Tex. Crim. App. 1996); *Heiselbetz v. State*, 906 S.W.2d 500, 511–12 (Tex. Crim. App. 1995). An appellant must demonstrate "with considerable specificity how [he] was harmed by the absence of more preparation time than he actually had," and this generally occurs at the hearing. *Gonzales*, 304 S.W.3d at 842–43.

### 2. Analysis—Denial of Motion for Continuance was neither Error nor Harmful

Appellant's trial counsel filed a motion for continuance on April 7, 2021, accompanied by a sworn affidavit. In the affidavit, Appellant's counsel confirmed that on March 23, 2021, he received the State's amended notice of extraneous acts and witness list with an additional alleged victim. At a pretrial hearing before the trial court on April 8, 2021, Appellant's counsel argued that the motion for continuance should be granted because the addition of an alleged victim was "significant" and would "possibly alter[ ] our strategy and our defense." Appellant's counsel also admitted that although he received the amended notice twenty days before trial, he did not immediately open it. Instead, counsel waited until the day before the pretrial hearing to file the motion for continuance.

The State argued that the notice was provided prior to the docket call where defense announced "ready" for trial, implying that if the defense truly needed additional time to prepare for the witnesses, it could have made a request at that time. The State also emphasized that the victim in this case, J.B.S., had prepared for trial twice and would have to do so again if the continuance was granted. Following argument from both sides, the trial court denied the motion.

To show the trial court erred in denying the motion, Appellant must show first, that "no reasonable trial judge could [have] conclude[d] that scheduling and other considerations as well as fairness to the State outweighed the defendant's interest in delay of the trial," and second, that he was harmed by the denial of the continuance.

15

*Gonzales*, 304 S.W.3d at 843. Here, Appellant fails to meet either prong of the test. Appellant's counsel essentially conceded that delay in investigating the claims made by M.C. was due to his own failure to open the e-mail from the State. Further, docket call where defense counsel announced "ready" occurred after the notice of a new extraneous offense witness was given and received.

Finally, Appellant did not articulate any particular harm should the continuance be denied. Appellant only claimed that the addition of a new witness could *possibly* alter his defense strategy. The additional witness, M.C., did not testify during the guilt/innocence phase of trial. He testified only at the punishment phase of trial. There was no indication in the trial record that trial counsel for Appellant was unprepared to cross-examine M.C. or that, because no continuance had been granted, defense evidence was unavailable. The motion for continuance had been denied, indicating that the court was willing to reconsider its ruling based on additional information and/or argument. There was no effort to approach the bench and reargue the motion with regard to M.C. on a more specific basis either immediately before or after M.C. testified.

Moreover, Appellant did not file a motion for new trial to demonstrate any harm that he suffered from the denial of his motion for continuance seeking more time to prepare for trial. As noted by the Texas Court of Criminal Appeals in *Gonzales*, a defendant can ordinarily only make the required showing of harm at a hearing on a motion for new trial to produce evidence regarding what additional information, evidence, or witnesses the defense would have utilized had the trial court granted the motion for continuance. *Id.* at 842–43 (citing George E. Dix & Robert O. Dawson, 42 TEXAS PRACTICE: CRIMINAL PRACTICE AND PROCEDURE § 28.56 (2d ed. 2001)).

The law requires that the harm from the denial of a motion for continuance seeking more preparation time be demonstrated with considerable specificity, and no such harm has been presented in this case. The trial court did not abuse its discretion in denying the motion for continuance under the circumstances. Accordingly, Appellant's third issue is overruled.

*This Court's Ruling*

We affirm the judgments of the trial court.


W. BRUCE WILLIAMS

JUSTICE


March 2, 2023

Do not publish. *See* TEX. R. APP. P. 47.2(b).

Panel consists of: Bailey, C.J.,
Trotter, J., and Williams, J.